## CROSBY v. STRAIN et al.

### No. 9879.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1936.

Rehearing Denied Dec. 17, 1936.

Charles J. Lieck, of San Antonio, for appellant.

Eskridge & Groce, of San Antonio, for appellees.

SMITH, Chief Justice.

This action was brought by Anthony B. Crosby against Charles R. Strain and P. F. O'Brien to recover damages for personal injuries sustained by him in an automobile accident. The parties will be designated as plaintiff and defendants, respectively, as in the court below. Plaintiff was a guest of defendants on the occasion of the accident, and in order to recover it was necessary that he bring his case within the purview of the exceptions to the exemption accorded the owner or driver from liability for injury to a guest passenger, as provided in the so-called "guest" statute of this state. Article 6701b, § 1, Vernon's Ann.Civ.Stat.

After a trial before a jury and their responses to special issues, the trial judge rendered judgment denying recovery to Crosby, who appealed.

The car involved was of the coupé type, with a rumble seat in its rear. At the time of the accident it was occupied by Charles R. Strain and Tom Strain, brothers, and their brother-in-law, P. F. O'Brien, all of whom occupied the main seat, and by plaintiff, sitting in the rumble seat. Charles Strain owned the car, but O'Brien was driving it at the time of the accident. The party was en route from San Antonio to Seguin, a distance of about forty miles. The accident occurred in the nighttime, on February 14, 1932. The parties were friends, and had been for years. They all resided in San Antonio, but plaintiff and defendant Strain were employed on a construction project at Seguin, and were returning to their work there when the accident happened.

The highway traveled by the parties on this night was paved with asphalt. The speed at which O'Brien drove was between forty-five and fifty-five miles per hour. He had driven over this highway repeatedly, and was familiar with it. It was marked by a series of bridges, similar in type. The

ninth of these bridges was about thirty miles out of San Antonio. The roadway, for some distance before coming to the ninth of these bridges, was "choppy," "bumpy," "wavy." The bridge, as were all of the series, was known as a "narrow bridge," and was so designated by highway markers.

About halfway out, plaintiff fell asleep at his place on the rumble seat, and did not awake before the accident happened eight or ten miles further on.

As the party neared the ninth bridge, another car approached from the opposite side. O'Brien did not slacken his speed, but the other car was slowed down, pulled over to the right side of the roadway, on the opposite side of the bridge from defendant, and stopped there to await the passage of defendant's car. At this time, and before, O'Brien was driving at a rate of fifty to fifty-five miles per hour. At one time he was cautioned by Tom Strain about driving so fast, but his only response to the protest was to tell Strain to "pipe down," that he (O'Brien) was "doing the driving." Just before reaching the bridge defendant's car was jolted, apparently by the rough surface of the roadway, partly onto a gravel shoulder, and got out of control. In this situation the driver, O'Brien, stepped on the accelerator in order to give the rear wheels more traction, as a device for steadying the car and recovering control of it. The car parked on the opposite side of the bridge had been so maneuvered as to throw its bright headlights in the faces of the occupants of defendant's car, blinding them. O'Brien, having by this time, according to his undisputed testimony, somewhat recovered control of his car, sought to direct it across the bridge. But, although he knew the bridge was there, he was so blinded by the headlights of the parked car that he "could not see" the bridge. As a result of this helplessness of the driver, the car struck the first bridge post, and was wrecked. Plaintiff, still asleep in the rumble seat at the moment of the impact, was thrown clear of the wreckage and received the injuries complained of in this suit, by reason of which the jury found he was damaged in the sum of $653.50.

The case is controlled by the Texas "guest statute," as follows: "Sec. 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others." Acts 1931, 42d Leg. p. 379, ch. 225 (Vernon's Ann.Civ. St. art. 6701b, § 1).

The jury found that plaintiff's injuries were proximately caused by the failure of defendant to have the car under proper control; by the rate of speed at which the car was being operated at the time of and just prior to the accident; by the driver's attempt to cross the bridge in the "path of the lights of the car on the other side of the bridge," and that each such act or omission constituted a "heedless and reckless disregard of the rights of others," as defined in the charge. The jury further found, however, that the act of the driver in accelerating the speed of the car just before the accident did not constitute such heedless and reckless disregard of the rights of others.

On the other hand, the jury found that plaintiff's injuries were proximately caused by negligent acts of plaintiff (1) in failing to request defendant to reduce the speed of the car; (2) in falling asleep prior to the accident; (3) in failing to alight from the car; (4) in failing to keep a lookout; (5) in voluntarily exposing himself "to the danger, if any, from the rate of speed at which the car was being operated prior to the accident."

The jury also found that the accident was not unavoidable.

Plaintiff rests his appeal upon two controlling contentions, as follows:

First. That the acts of defendants constituted heedless and reckless disregard of the rights of plaintiff, within the contemplation of the statutory exception from the exemption accorded owners and drivers from liability for injuries to their nonpaying guests, such as plaintiff in this case.

Second. That contributory negligence of the guest is not a defense available to defendants found guilty under the statute of heedless or reckless disregard of the rights of others.

Counsel for both parties have made a very exhaustive, interesting, and informative presentation of the question of whether contributory negligence is a defense in

such suits. But that question is not deemed to be controlling in the appeal, and will not be decided here. It was discussed in a recent case by the Eastland Court of Civil Appeals, which held, by inference only, that the contributory negligence of an injured guest affords a defense to such suits. Napier v. Mooneyhans (Tex.Civ. App.) 94 S.W.(2d) 564. The question was also discussed by this court in the recent case of Aycock v. Green (Tex.Civ.App.) 94 S.W.(2d) 894, but as a settlement. of that question was not necessary to the decision in that case, which was decided solely upon the facts, as this case must be, the expressions of this court upon the subject were dicta, and therefore not authoritative.

■ We have carefully considered the record, and are of the opinion, and so hold, that the evidence does not support the jury findings that plaintiff was ·guilty of contributory negligence in the particulars charged against him. We will notice those findings, briefly. Plaintiff fell asleep along the way. The jury found that this was negligence upon plaintiff's part, proximately causing his injury. We think the finding of the fact, and of its proximate effect, was erroneous as a matter of law. Plaintiff had often before ridden in cars driven by O'Brien. He did not regard O'Brien as an unsafe, or reckless, driver. At the time plaintiff fell asleep, O'Brien was driving at his usual speed, which plaintiff regarded as an ordinary rate, and which common knowledge teaches us is not unusual in these times. Can it be rationally said that plaintiff was guilty of negligence in falling asleep? What better or safer position would he have been in had he remained awake, caged, so to speak, as he was, back on the rumble seat of the fast moving car, in the night time at that? The same may be said of the finding that plaintiff was negligent in not keeping a "lookout." How was he to "look out," sitting behind the body and seat of the closed car, with three other men sitting directly in front of him, as well? What could he have seen had he "looked out," and how could he have looked out except by the hazardous experiment of leaning far out of the rumble seat, which certainly could not be exacted of him by the demands of ordinary care? And what could he have done as an alternative of sitting tight where he was? The finding of the jury, that in failing to "request"

O'Brien to reduce the speed of the car plaintiff was guilty of negligence proximately causing his injuries, is equally fallacious. In the first place, plaintiff was asleep and therefore unaware of the speed of the car. In the second place, had he been awake, it is not rationally conceivable that such a "request" from a guest pas· senger, voiced from back in the rumble, would have any weight with the driver, from whom such a protest, from his brother-in-law, sitting by his side, met with such short shift. "Back-seat drivers," as a rule, are not favored by drivers, to say the very least of it, and it is almost, if not quite, a matter of common knowledge, that their hints, observations, requests, or demands, more often aggravate and anger —and always annoy—the drivers, who either ignore or openly resent such attempted interference. And it is easily conceivable that a rumble-seat driver is looked upon with even less favor than a mere orthodox "back-seat driver." Obviously, the finding of the jury that plaintiff was guilty of negligence proximately causing his injuries in "failing to alight from the car" is without support in the record. Any rational human being would choose to fly to all the ills he knows not of, than to climb out of a rumble and alight from a car while it is moving at a speed of fifty to fifty-five miles per hour. And for all the reasons set out above we hold that the jury was without warrant in finding that plaintiff was guilty of negligence in "voluntarily exposing himself to the danger, if any, from the rate of speed at which the car was being operated prior to the accident." We hold that the evidence was insufficient to support the jury findings upon the issues of contributory negligence, and the question of whether such negligence affords a defense to a suit based upon the guest statute is therefore out of the case.

■ The question recurs, then, upon the contention of plaintiff that the conduct of the driver of the car constituted a heedless and reckless disregard of the rights of others, within the contemplation of the guest statute. We have carefully considered the record, and have stated the salient facts pertinent to this branch of the case. We have reached the conclusion that those facts, and the evidence supporting them, are not sufficient to convict defendants of that character of heedlessness and recklessness. The evidence shows, simply, that O'Brien was driving over an

asphalt paving which had become "choppy," "bumpy," and "wavy"—but not so rough as to awaken the sleeping guest in the rumble seat—at a speed of fifty to fifty-five miles per hour; that he had often driven over that road, with which he was entirely familiar; that he usually drove at that speed; that when he neared the bridge, with which he was likewise familiar, his car edged or bounced partly over upon a gravel shoulder, throwing it partly out of control; that he righted the car, and started across the bridge, but was so blinded at that moment by the glare of the headlights of another car that he could not see, and thereby avoid, the bridge post which barely caught, but overturned, the car, causing the injuries to plaintiff. Undoubtedly, these facts would have warranted jury findings of negligence against the driver, but they did not warrant findings that such acts were so wilful or wanton as to constitute a heedless and reckless disregard of the rights of others, as contemplated by the guest statute. That statute was enacted for the purpose of putting an end to suits by injured nonpaying guests against their hosts except in those extreme cases defined in the act. If the bar of the statute is once let down to admit cases of ordinary negligence, or even higher degrees of negligence short of wantonness or of the heedless and reckless disregard of the rights of others plainly contemplated by the statute, then the object and purpose of the legislation will easily and soon be destroyed.

The judgment is affirmed.