Dave COOPER, Appellant,

v.

ARGONAUT INSURANCE CO., Appellee.

No. 17100.

Court of Civil Appeals of Texas.

Dallas.

May 31, 1968.

Rehearing Denied June 21, 1968.

David M. Kendall, on appeal only, Woodruff, Hill, Bader & Kendall, Dallas, for appellant.

L. W. Anderson, Dallas, for appellee.

BATEMAN, Justice.

This is a workman's compensation suit in which judgment was rendered for appellant for the unpaid balance of weekly payments due him because of an inguinal hernia. Being dissatisfied with the amount, and because he was allowed nothing for alleged back injury, he appeals and assigns twenty-five points of error.

He alleged both the inguinal hernia and a lumbosacral back strain which aggravated a previously existing degenerative arthritic condition of his lumbar spine. He also sued for certain medical and hospital expenses, alleging that appellee refused to pay them. Appellee provided him hospitalization and a surgical operation to repair the hernia and paid him several weekly benefits at the maximum rate of $35 per week. The jury found that appellant's injury was confined to a hernia, and that the hernia operation was successful. Other special issues, submitted conditionally upon either a finding that the injury was not confined to a hernia, or that the hernia operation was not successful, and relating to the claimed general injury to the back,

were not answered. The jury refused to find, in answer to Special Issues Nos. 13 and 15, respectively, that appellee failed, refused or neglected to furnish reasonable medical and hospital services as and when needed, or that manifest hardship and injury would result from payment of compensation to appellant in weekly installments instead of a lump sum. The jury also found that the disability was due solely to outside causes.

By his first two points of error appellant complains of the action of the trial court in permitting appellee's counsel to examine appellant and his son as to whether appellant had been married to the son's mother. These points will be considered together with the twelfth point of error, wherein the appellant complains of the following argument of appellee's counsel to the jury:

"Now, maybe I am wrong going into this, but we have a man's credibility here. We have Mr. Cooper. He is somewhat on trial himself, because he is the one that says, 'I hurt, I can't do this, I can't do that.' And of course, we don't know, you and I don't know. We don't know whether he is telling the truth, or not. So, we have a right and we have a duty to examine the man, look at him, look at his background, look at his morals; a man that lived with a woman, his friend, had children by her, didn't marry her. Is that the type of man that is to be believed? Is that the type of man that has the moral character that should be believed?"

■ Appellant did not object either to the testimony in question or the jury argument quoted above. It is our opinion that by his failure to object he waived what error there may have been. Such objections cannot be first urged on appeal as a ground for reversal. Hinsley v. Continental Trailways Bus System, 302 S.W.2d 668 (Tex.Civ.App., Galveston 1957, no writ), and cases therein cited; McCormick and Ray, Texas Law of Evidence, 2d Ed., § 22, p. 20; 56 Tex.Jur.2d, Trial, § 158, p. 499;

City of Houston v. Huber, 311 S.W.2d 488, 495 (Tex.Civ.App., Houston 1958, no writ); Consolidated Underwriters v. Pittman, 388 S.W.2d 315, 319 (Tex.Civ.App., Beaumont 1964, no writ). The first, second and twelfth points are overruled.

By his third point of error appellant asserts that the entire jury argument of appellee's counsel was so prejudicial and inflammatory that it could not be cured by any instruction and probably resulted in an improper verdict. This point is too broad and multifarious in that it fails to direct our attention to the specific error relied upon, as required by Rule 418, Vernon's Texas Rules of Civil Procedure. Insofar as it may be said to apply to the above quoted argument, we hold that the error could have been cured by instruction. The third point is therefore overruled.

In his fourth point of error the appellant complains of argument of counsel for appellee to the jury with respect to a claim made by appellant to his disability insurance carrier. Appellee had offered the testimony of one J. A. Stanfield, District Manager for Atlanta Life Insurance Company, in which company appellant owned a policy of disability insurance, to the effect that appellant had made a claim against that company for the hernia suffered by him and was paid weekly benefits under that policy aggregating $90. The trial court admitted the testimony only on the lump sum issue. In the early part of his jury argument, however, counsel for appellee said:

"Do you know what really cinches this thing and really gets right down to the heart of it, is what did he claim to his own insurance carrier? What did Mr. Stanfield say?"

When reminded by the court that Stanfield's testimony had been admitted for a limited purpose, appellee's attorney said:

"All right. Well, anyway, Mr. Stanfield testified that he was paid a period for up until November 3rd, 1966."

The trial court correctly handled the matter, and we do not think appellant was prejudiced by appellee's somewhat reluctant compliance with the ruling. Appellant's fourth point is overruled.

In this connection we consider appellee's cross-point, which complains of the restriction placed by the court on Stanfield's said testimony. It is argued thereunder that appellant's failure to present a claim to his own carrier for his back injury is an admission that he actually had no such claim, and also that he was not disabled beyond the period for which he was paid by his own insurance carrier.

In our opinion, the court properly declined to undertake the trial of the issues involved in appellant's claim against his own insurance carrier. This was a collateral transaction, its only relevance here being, as the court ruled, in connection with appellee's effort to disprove appellant's claim of poverty in connection with the issue on lump sum. Therefore, we overrule appellee's cross-point.

By his fifth point of error appellant complains of argument by appellee's counsel to the jury that a certain doctor who had testified for appellant was "obviously a friend of Mr. Terry [appellant's counsel] or he would not have referred him to him or sent him over." Appellant cites no authority to indicate that such argument is improper or that it would constitute reversible error. We see no merit in the point, and overrule the same.

By his sixth and seventh points of error appellant complains because counsel for appellee, in his argument to the jury, commented upon the failure of appellant to call a certain doctor, who had examined the appellant, as a witness and indicating that the doctor was not called because his testimony would have been unfavorable to appellant. The reference was to a Dr. Wisner, an orthopedist to whom Dr. Francis had sent appellant for examination and evaluation for further diagnosis and

treatment. No authority is cited to support these points, and we do not think they present reversible error. In the first place, such argument has been held to be proper where the opposite party has failed to call a witness "employed by him." Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 167, 68 A.L.R.2d 1062 (1957). Here Dr. Francis had been employed by appellant for treatment of his injuries, and we think Dr. Wisner, who had been employed by Dr. Francis as a consulting physician, should be considered as being in such relationship with appellant as to authorize the comment. Moreover, the arguments were not objected to, and the right to complain was thereby waived. Wallace v. Liberty Mut. Ins. Co., 413 S.W.2d 787, 789 (Tex.Civ.App., Houston 1967, writ ref'd n.r.e.); Consolidated Underwriters v. Whittaker, 413 S.W.2d 709, 718 (Tex.Civ. App., Tyler 1967, writ ref'd n.r.e.). Also, we do not think the argument, if it be considered improper, was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. Rule 434, T.R.C.P.; Consolidated Underwriters v. Whittaker, supra. These points are overruled.

■ Appellant's witness Dr. Mancuso had in effect testified that he did not consider appellant to be totally and permanently disabled. In commenting thereon in his argument to the jury, counsel for appellee said, in effect, that Dr. Mancuso "wouldn't go along with Mr. Cooper and Mr. Terry." Appellant claims in his eighth point of error that this remark of the attorney inferred improper conduct upon the part of counsel for appellant, but we see no justification for this inference. Moreover, no objection was made to the argument, and the complaint was thereby waived. The eighth point is overruled.

■ By his ninth point of error appellant complains of "repeated testimony by counsel for appellee as to his opinion as to the credibility and competence of the witness, Dr. Young." Dr. Young, a witness

for appellee, had testified to his professional qualifications, and these were not challenged. In presenting his argument to the jury, counsel for appellee merely said:

"Now, we have got Dr. Young. Well, you saw Dr. Young. I think he was conscientious, well-trained, a competent man. He says, 'I operated on him, the hernia operation was successful.' There isn't any question about whether it is successful, or not. And he said, well, the man did complain of some pain in his back, and I gave him some medicine for it. I examined him, and I couldn't find anything wrong with him."

We think appellee's counsel had a right to make these comments. J. D. Wright & Son Truck Line v. Chandler, 231 S.W.2d 786 (Tex.Civ.App., Galveston 1950, writ ref'd n.r.e.). The ninth point is overruled.

■ We shall consider the tenth, sixteenth and seventeenth points of error together. They complain that appellee's counsel in his argument to the jury improperly advised the jury of the effect of its answers to the special issues, particularly Special Issue No. 6, wherein the court asked the jury whether they found from a preponderance of the evidence that the total disability, if any, inquired about in Special Issue No. 3, was or is temporary or permanent. The argument complained of was as follows:

"Of course, the most, as Mr. Terry pointed out to you, that is an important issue, No. 6, Ladies and Gentlemen, is an important issue, because that is when he picks up the total change, that is when he rings the bell. That is No. 6, which is whether the total disability is temporary or permanent. And if you put in there 'Permanent', he gets four hundred and one weeks at $35.00 a week or $14,-035.00. So, if you think that he is entitled to $14,035.00, you're going to have to put 'Permanent' in there. I don't think he is entitled to that much money or anywhere near that amount."

This type of argument has been held repeatedly by our courts to constitute reversible error, as tending to defeat the underlying purpose of the special issue system of submitting causes to the jury. Ex Parte Fisher, 146 Tex. 328, 206 S.W.2d 1000, 1004 (1947); Sisk v. Glens Falls Indemnity Co., 310 S.W.2d 118, 121, 66 A.L.R.2d 1 (Tex.Civ.App., Houston 1958, writ ref'd n. r.e.); Sheffield Division Armco Steel Corp. v. Jones, 369 S.W.2d 71, 83 (Tex. Civ.App., Houston 1963, reversed on other grounds, 376 S.W.2d 825); Williams v. Safety Casualty Co., 97 S.W.2d 729, 732 (Tex.Civ.App., Eastland 1936, reversed on other grounds, 129 Tex. 184, 102 S.W.2d 178.)

It has also been held that this type of argument constitutes an error which cannot be cured by an instruction to disregard it, and that it is therefore not necessary for an appellant to object at the time of the argument in order to preserve the right to complain. Pacific Employers Ins. Co. v. Barnett, 230 S.W.2d 331, 334 (Tex. Civ.App., Fort Worth 1950, writ ref'd n.r. e.); Airline Motor Coaches v. Curry, 191 S.W.2d 98 (Tex.Civ.App., Beaumont 1945, writ ref'd w.m.).

However, there are two reasons why we should not reverse the judgment because of this erroneous argument. First, appellant's counsel had himself said in his opening argument, with respect to Special Issue No. 6:

"All the evidence in the record indicates to me, and I think it should to you, that his condition is permanent. You will recall that we are suing for $35.00 a week for a period of 401 weeks."

The jury could easily determine from this statement the total amount sued for and that the recovery of that amount would result from an answer of "Permanent" to Special Issue No. 6. Having himself in effect told the jury the effect of their answer to this issue, appellant cannot complain that appellee did so.

In the second place, the jury did not answer Special Issue No. 6 at all; and it is not shown, or even seriously contended, that the argument probably influenced the jury in making answers to any of the other special issues. Therefore, points 10, 16 and 17 are overruled.

Appellant's eleventh point of error complains of the argument of appellee's counsel to the jury that they should base their answers to the issues on what was "fair" rather than upon the court's charge. This point is too general and abstract to be worthy of consideration. It apparently refers to numerous appeals by appellee's attorney for the jury to be "fair". We find no objection in the record to any of these appeals, and have therefore concluded that the point is without merit. It is overruled.

By his thirteenth, fourteenth and fifteenth points of error appellant complains of arguments by appellee's counsel to the jury to the effect that appellant's medical bills were paid by "Medicare," and that it was unfair for him to seek to recover such expenses in this case when he had "Medicare." It is argued that this constituted an attempt to cause the jury to disregard the court's instructions and base its verdict upon its concept of what should and should not be recoverable. The hospital records in evidence showed that appellant was covered by the government's insurance plan known as "Medicare." Of course, attorneys have the right to draw proper inferences and deductions from facts and circumstances in evidence, so long as they are fair and reasonable and are related to issues submitted to the jury. Travelers Ins. Co. v. Bohanon, 381 S.W.2d 929 (Tex.Civ.App., El Paso 1964, no writ). Here, however, appellant had pled and offered proof of his right to recover certain medical expenses under the Workmen's Compensation Act. The court submitted Special Issue No. 13 to the jury, inquiring

as to whether the appellee had failed, refused or neglected to furnish reasonable medical and hospital services as and when needed; and the jury answered "No." Appellee was not entitled to defeat appellant's claim for such medical expenses by showing that appellant had already collected them from another insurer or that "Medicare" had paid them. Kainer v. Walker, 377 S.W.2d 613 (Tex.1964). Therefore, the jury argument could have had but one purpose, i.e., to suggest to the jury that it would be wrong to permit appellant to collect twice for the same medical expenses. The making of the argument was clearly error, and we think it probably caused the jury to answer Special Issue No. 13 in the negative. Therefore, the thirteenth, fourteenth and fifteenth points are sustained.

■ By his eighteenth point of error the appellant says that in arguing the case to the jury counsel for appellee gave "his own personal, unsworn beliefs and opinions as to whether appellant had partial disability, as to whether appellant could straighten up and walk right, as to whether appellant should get 20 or 30 weeks of partial disability and similar matters," which was highly improper and incurable by any instruction from the court. These comments were based upon the testimony of appellee's witness, Dr. Marvin Knight, to the effect that in his opinion appellant would not have any trouble if he would straighten up and walk right. The attorney, in our opinion, was merely exercising his right to give his views of the evidence and to explain and interpret the same, discussing its weight or probative effect or the want thereof. J. D. Wright & Son Truck Line v. Chandler, 231 S.W.2d 786 (Tex.Civ. App., Galveston 1950, writ ref'd n.r.e.). The eighteenth point is overruled.

In his nineteenth point of error the appellant urges us to consider all of the previous points of error, "singly or cumulatively," as being so inflammatory and prejudicial that they probably caused the jury to answer issues upon considerations other than the evidence before them, causing or probably causing the rendition of an improper judgment. We see no merit in this point and overrule it.

Appellant's twentieth and twenty-first points of error complain of a certain statement of the trial court in the presence and hearing of the jury. In the course of the argument of appellee's counsel to the jury, counsel for appellant objected four or five times, and in each instance the court sustained the objection. Appellant's counsel then objected to the next argument made by his adversary, and before the court could rule on the objection counsel for appellee said, "Judge, we're going to object to counsel's interrupting me." Whereupon the court said:

"Yes. Now, don't object any more, Mr. Terry, unless it is necessary, we would be delayed too long here with our argument."

■ It was clearly error for the court thus to restrict the attorney's right to object to his adversary's arguments. It is the attorney's right, as well as his duty, to make such objections whenever he feels that his adversary is making an improper argument.

Appellant did not object to this statement by the trial court, but we are of the opinion that it was of such an objectionable nature that it could not have been cured by a further instruction, and that, therefore, the point was not waived by the failure to object. These two points are sustained.

In his twenty-second point of error appellant complains of the overruling of his Motion for Mistrial, which was filed a month after the verdict. As all of the grounds thereof are set forth in appellant's points of error on appeal to this court and have been hereinabove discussed and determined, it is unnecessary for us to pass on this very general and complex point.

In his Points of Error Nos. 23, 24 and 25 appellant asserts that the answers of the jury to Special Issues Nos. 2A, 2B and 16 are against the great weight and preponderance of the evidence. These findings were (2A) that the injury was confined to a right inguinal hernia, (2B) that the hernia operation was successful, and (16) that appellant's disability was due solely to outside causes (as distinguished from having been produced by the injury in question).

We have carefully studied the entire statement of facts and conclude that the first and third of such findings, while supported by some evidence, are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. We shall briefly review the relevant evidence.

Appellant testified that he was 72 years of age, had worked for the same employer more than twenty years, doing maintenance work on machinery. Prior to his injury he was in good health and worked six and seven days a week. He worked 312 days in the year preceding his injury, and 65 hours in the week preceding his injury. While working in the course of his employment he moved a 55-gallon drum of feed, feeling a sharp pain all through his body, in his groin and in his back. Two days after the accident he went to Dr. Louis Mancuso and told him he had injured his back and a mass in his groin developed. Dr. Mancuso corroborated this testimony. He was admitted to St. Paul Hospital and there examined and operated on by a Dr. Young, who put a light on his back and gave him "a shot and pills" for his back.

After his release from the hospital, appellant said he went back to see Dr. Mancuso because of pain in his back and groin; that Dr. Mancuso put a light on him. He last saw Dr. Mancuso in January 1967. His attorneys sent him to see Dr. James H. Francis, who examined him and put him in traction at the Garland Clinic and Hospital. The physiotherapy he received there made him feel somewhat better. He said, however, that at the time of trial he could not lift, bend, climb, stoop or get around like he did prior to his injury; that his back hurt him. Dr. Mancuso testified by deposition that he first saw appellant on August 29, 1966 and saw him twenty other times up to January 30, 1967. It was his opinion that appellant had, in all reasonable probability, sustained an injury to the inguinal and pelvic area which resulted in incapacity which was permanent; that appellant had frequency of urination and some back pain.

Appellant's nephew, son and granddaughter testified that before the accident appellant worked hard, mowed his yard, cleaned his house and did his own cooking, but that since the accident he walks "bent over" and acts as if he was experiencing pain on movement of his back.

Dr. James H. Francis testified by deposition that his initial examination of appellant on February 15, 1967 revealed tenderness over the lumbosacral area of his back and upper sacrum, with muscle spasms and limited motion in all directions; that he had appellant admitted to a hospital on February 21, 1967, where he stayed until March 11, 1967; he continued to have pain and muscle spasms in his back; that Cooper has been most consistent about his symptoms; that his backache improved slightly with traction and muscle relaxants, but then he was worse; that appellant had difficulty walking and walked with a limp; that he had difficulty going through the motions required in the examination and had trouble getting on and off the examination table; that any sudden movement caused him pain in his low back; that he had persistent muscle spasms and tenderness over the mid back and low back on every subsequent examination. He made similar findings on an examination in July of 1967 and that it was his opinion that appellant had ruptured himself and had received a lumbosacral strain and sprain. He defined the sprain as a tearing of the

ligaments, tendons and other connecting tissues around the joint capsules in the lumbosacral area. He also testified that because of appellant's active muscle spasms and complaints of pain and limitation of motion over an extended period of time, he felt that this condition was chronic; that it was static and certainly not improving; that he had not improved since he left the hospital and that he believes he hurts all the time; that appellant cannot do any lifting, stooping or bending or any work that would require use of his back.

Dr. David W. Young was employed by appellee to examine and treat appellant; that after appellant's admission to the hospital, but before surgery, appellant told him that his back was hurting, besides his hernia. The doctor examined him at that time and found no nerve root damage. He was asked twice if he found any muscle spasm in appellant's back, but gave evasive answers both times. Appellant was in the hospital about seven days, during which time the doctor ordered infrared heat twice a day to his lumbar back. When he saw. appellant on September 15 in his office, he found the hernia wound was clean and well healed, but that the patient complained to him at that time of some back pain; that he gave him a muscle relaxant to relieve the symptom of back pain; that appellant was complaining more of his back than of the hernia repair. When he saw appellant again on November 24, 1966 appellant was still complaining of back pain but not about the hernia repair. The doctor further said that his treatment of appellant was mainly for the hernia, and he thought the patient progressed satisfactorily from the hernia repair, although he was still complaining of the back the last time he saw him, but that he thought he was progressing at that period of time satisfactorily as he should, and that he did not think there would be any permanent or partial disability.

Appellee also employed Dr. Marvin Knight, an orthopedic surgeon, to examine appellant. Dr. Knight examined appellant on November 1, 1966 and again on July 5, 1967. He said he did not know whether appellant's back was injured in August 1966 or not, but that he had x-ray pictures made of his back on both examinations and could find no evidence of injury, only arthritic conditions which pre-existed August of 1966 and were not caused by injury; that he did not see or feel any spasm in appellant's back, and that appellant had a good range of motion when he was standing straight up; that he did not find any evidence of any lumbosacral strain of any type, but that the hernia scar was still healing at the time of the November 1966 examination; that when he saw appellant again in July 1967 his posture was better but that there was still soreness from the hernia; that in July 1967 he thought appellant's back was "better than average" for a man 72 years of age and that, in his opinion, appellant would be all right if he would straighten up.

In our opinion, the overwhelming weight and preponderance of the evidence, as shown by the foregoing summary, is that appellant did sustain some degree of injury to his back on the occasion in question, and the jury finding that the injury was confined to the hernia is so against that evidence as to be manifestly wrong. Therefore appellant's twenty-third and twenty-fifth points of error are sustained.

We overrule the twenty-fourth point. Although the evidence indicates that there was still some soreness in the region of the hernia surgery some ten months thereafter, we cannot say that the finding that the hernia operation was successful is against the great weight and preponderance of the evidence.

For the reasons hereinabove given, the judgment appealed from is reversed and remanded for a new trial.

Reversed and remanded.