**Billy Joe SPARKS, Appellant,**

v.

**Geneva DALTON et al., Appellees.**

No. 17138.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 9, 1970.

v.

Nelson, Sherrod, Carter & Oldham, and Stan Carter, Wichita Falls, for appellant.

Banner & McIntosh and Ed McIntosh, Wichita Falls, for appellees.

## OPINION

MASSEY, Chief Justice.

Plaintiffs, Geneva Dalton and sister, were guests in the automobile driven by defendant Billy Joe Sparks. At night, in a rural area, defendant drove his automobile rather rapidly in an approach upon an intersection where it was necessary that the automobile be turned or stopped if there would be avoidance of collision. That was true because the intersection in question was in the form of a "T", the top of which was approached. It was indicated by the facts in the record that defendant's automobile was moving at such speed that when he attempted to brake the same so that he could either stop or slow sufficiently to enable a turn to be made he failed in his attempt so to do, with the result that his automobile struck an iron gate at the end of the road (top of the "T") and injuries to the plaintiffs resulted.

Admittedly the plaintiffs were guests in the automobile driven by the defendant, with the Texas "Guest Statute" applicable as applied to defendant's liability. Vernon's Ann.Tex.Civ.St. Art. 6701b, *"Liability for injuries to gratuitous guest in motor vehicle limited*; etc. * * *."* In other words plaintiffs had no cause of action against defendant because of damages flowing from injuries sustained by them "unless such accident shall have been intentional * * * or caused by his (defendant's) heedlessness or his reckless disregard of the right of others (plaintiffs)."

Following a trial before the jury plaintiffs obtained a judgment predicated on the theory of the defendant's gross negligence. The defendant appealed.

Reversed and rendered.

By a cross-point the plaintiffs contend that the defendant waived right to complain by points on appeal because of his failure to conform to Texas Rules of Civil Procedure, rule 322, "(New Trials)— *Generality to be Avoided,"* T.R.C.P. 321, "(New Trials)—Form", and T.R.C.P. 374, "Assignments of Error". Essentially plaintiffs' contention is that defendant's assignments of error in his motion for new trial were so voluminous that those matters complained of therein which subsequently were made points of error on appeal were effectively concealed. His claim is that the trial court was not fairly presented the first opportunity to see and understand and correct the errors complained of. We have referred to defendant's motion for new trial and have determined that there is no merit in plaintiffs' cross-point. It is overruled.

On trial of the plaintiffs' personal injury action the material special issues upon the matter of defendant's gross negligence was submitted as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that Billy Joe Sparks knowingly and intentionally operated his motor vehicle at a speed greatly in excess of that speed which a reasonable and prudent person would have operated the vehicle under the circumstances then existing?

"Special Issue No. 2: (conditionally submitted) Do you find from a preponderance of the evidence that his operation of the motor vehicle in the manner inquired about in the preceding issue, if you have so found, was gross negligence?

"By the term 'gross negligence' as used in the preceding issue is meant more than mere momentary thoughtlessness or inadvertence. There must be an entire want of care so as to raise the belief or presumption that the act complained of was the result of conscious indifference to the rights, welfare or safety of persons affected by it."

■ As recognized by the courts in many opinions, and noted in passing in Burt v. Lochausen, 151 Tex. 289, 249 S.W. 2d 194, 200 (1952) where excessive speed alone is the cause of an accident the case is one of ordinary negligence and not of gross negligence as contemplated under Texas' "Guest Statute". Also discussed in that case were "circumstances" which would be taken into consideration along with such excessive speed to make of the case one as to which the statute would have application, i. e., one in which the issue of gross negligence would be present.

Where such "circumstances", to be taken into consideration along with excessive speed, are indisputably established as a matter of law (so that there would be no necessity of any fact finding relative thereto) there would exist a case in which excessive speed—taken into consideration along with surrounding circumstances (presumed as ascertained and authorized by the court to be taken into consideration)—might be found by the jury to constitute gross negligence. That would not be true where issues of fact relative to such "circumstances" are raised by the evidence.

For example, in the instant case there was evidence to the effect that the defendant was not aware of his proximity to the "T" intersection until it was too late; and that he attempted to control his automobile by slowing it down and effecting a turn in order to avoid a collision, or at least to minimize the damage to result from colli-sion. Therefore fact issues were injected into the case relative to "circumstances" to be taken into consideration along with the excessive speed, in the determination of the existence of gross negligence. These "circumstances" were never determined and defined as matter thus to be taken into consideration.

Since there was no determination of these disputed issues of fact, the manner of submitting special issues permitted the jury to independently embark upon a roving mission to seek nebulous and undefined "circumstances" to take into consideration along with defendant's excessive speed so that a finding of gross negligence could be made. The manner of submission amounted to a general charge. It was global in character and constituted reversible error.

■ Furthermore, we hold that there was reversible error in that the manner of submission constituted a charge on the evidence or weight thereof in that it assumes that the defendant was traveling at either an excessive rate of speed or a greatly excessive rate of speed, matter as to which issues of fact existed. Also, the manner of submission was subject to the complaint that multifarious issues were thereby presented where language related to defendant having "knowingly and intentionally" improperly operated his vehicle. Johnson v. Zurich General Accident & Liability Ins. Co., 146 Tex. 232, 205 S.W.2d 353 (1947); Meyer v. Great American Indemnity Company, 154 Tex. 408, 279 S.W.2d 575 (1955). See also discussions in Commercial Standard Insurance Company v. Allred, 413 S. W.2d 910 (Tex.Sup., 1967) and this court's opinion in the same case at 400 S.W.2d 778, reversed by the Supreme Court.

All these matters were raised in the trial court and preserved and presented on appeal. Since excessive speed alone would not support a judgment on the theory that it constituted gross negligence, and since there were fact issues raised upon the "circumstances" to be taken into consideration

along with excessive speed in the determination of gross negligence, and since the manner of submission of the court's charge to the jury was erroneous and prejudicial to the defendant in that it contained a comment on the evidence or weight thereof and also was global and amounted to a general charge we hold that the judgment would require a reversal and remand assuming there was evidence introduced on trial which raised the issue of the defendant's gross negligence.

■ However, after an examination of the statement of facts we have reached the conclusion that there was no evidence which sufficed to raise the issue of gross negligence in this case and that our judgment should be one of rendition rather than remand.

This is not such a case as Hanks v. LaQuey, 425 S.W.2d 396 (Austin, Tex.Civ. App., 1968, ref., n. r. e.) in which the defendant drove his automobile rapidly on a city street and into the twenty-first car of a twenty-nine car train which was moving upon a railroad crossing running across the street on which the defendant was driving his automobile. There it was settled by jury findings that the defendant was driving at an excessive rate of speed without keeping a proper lookout and failed to apply the brakes on his automobile in time to avoid the collision. Coupled with such findings, plus the undisputed facts that the defendant was driving at such excessive speed for some distance before the collision occurred —on a heavily traveled city street on which there were intersections for crossing vehicles—in an approach toward the railroad crossing of which defendant had knowledge, at which there were flashing red lights in operation to denote the fact that the train was in the process of crossing,— the holding of the court was to the effect that the evidence raised the issue of gross negligence. The court held further that though the skid marks indicated that the defendant did everything possible to avert the crash and thus obviate the heedlessness and lack of concern immediately preceding the attempt to reverse his chosen course the gross negligence in connection therewith was inoperative to alter the fact that his gross negligence was the proximate cause of the collision and its consequences. The opinion of the court contains a valuable discussion of prior authorities upon which it reached its conclusions.

Here the contrary situation is presented. The defendant knew that he was approaching the "T" of the intersection, but there was no roadway marker which served notice upon him that he was near upon it before it came within the range of his headlights. There were no crossings upon which defendant might have expected any vehicles to cross the road on which he was traveling before he reached the intersection; there were no other vehicles on the roadway. The only hazard incident to the defendant's acts, under the circumstances, was that of running upon the "T" intersection he knew to be at the end of the road while traveling at such an excessive speed that he might be unable to brake his automobile and stop it or slow it down so that he could safely negotiate a turn. That is exactly what occurred. Defendant failed to discover landmarks which caused him to be aware that he was approaching the intersection, nothing having been called to his attention with reference thereto until it came within range of his headlights. The brakes on the defendant's automobile were in good condition, but despite that fact and his prompt application thereof his excessive speed carried him into the intersection and into the obstruction at the opposite side.

The evidence as to acts and omissions on the part of the defendant falls short of raising any fact issue of gross negligence proximately causing the collision and its consequences. The evidence raised the issue of ordinary negligence only. See Webb v. Karsten, 308 S.W.2d 114 (Houston, Tex. Civ.App., 1957, no writ hist.); Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022 (1940); Crosby v. Strain, 99 S.W.2d 659 (San Antonio, Tex.Civ.App., 1936, writ dis-

missed); Pfeiffer v. Green, 102 S.W.2d 1077 (Beaumont, Tex.Civ.App., 1937, no writ hist.); Linn v. Nored, 133 S.W.2d 234 (Austin, Tex.Civ.App., 1939, writ dism. judgm. cor.); and Wood v. Orts, 182 S.W. 2d 139 (San Antonio, Tex.Civ.App., 1944, no writ hist.).

■ In view of the possibility of another trial in the event we are in error in holding that there was no evidence raising the issue of gross negligence we make mention of another matter of complaint on appeal. Defendant represents that his defense of the case was actually by an insurance company which afforded him liability protection under a "Family Automobile Policy" secured by his father. Defendant was a member of his father's household at the time of his accident. On the same policy form there existed the coverage of "medical payments". Under the contractual provisions of such coverage plaintiffs were beneficiaries insured with reference to the medical and hospital expenses incurred as the result of the injuries they sustained. Plaintiffs' medical and hospital expenses were paid according to the "medical payments" provision.

Defendant insists that error resulted because of the trial court's ruling which excluded consideration in verdict and judgment of those payments already made to plaintiffs as "medical payments". The contention advanced is that unless credit in the tort action be given for the amounts paid plaintiffs under the "medical payments" coverage there would be an allowance of a double recovery (considering the insurance company as the defendant, or standing in the place of the defendant).

The matter is discussed in the case of Edmondson v. Keller, 401 S.W.2d 718, 721 (Austin, Tex.Civ.App., 1966, no writ hist.), and the holding was that the "collateral source" rule should be applied. It was applied by the trial court in the instant case, and properly so under the applicable contract law of Texas. While we understand the sentiments expressed (in behalf of the insurance company) it is obvious that there was an election by the company to furnish to the plaintiffs insurance as applied to certain of their medical and hospital expenses under the contingency presented by the circumstances of the case—as by a policy contract which might be treated as wholly separable from that containing provisions by which the defendant Billy Joe Sparks was afforded liability insurance. Having so elected the insurance company would be bound. The "collateral source" rule was applicable though it resulted in what seemed (from defendant's viewpoint) to be a double recovery.

Judgment reversed and rendered for the defendant.