The **STANDARD FIRE INSURANCE COMPANY,** Appellant,

v.

**Betty Y. RATCLIFF,** Appellee.

No. 5554

Court of Civil Appeals of Texas, Waco.

May 20, 1976.

Bailey, Williams, Westfall, Lee & Fowler, C. Edward Fowler, Jr., Dallas, for appellant.

Frank R. Jewell, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a workman's compensation case. Plaintiff-Appellee Betty Y. Ratcliff recovered judgment against Defendant-Appellant Standard Fire Ins. Co. for total loss of use of her right leg, at the rate of $63.00 per week for a period of 200 weeks, and in addition thereto $1874.95 for medical and hospital expenses related to the care and treatment of her injury. From this trial court's judgment Appellant Standard Fire appeals. We affirm.

Trial was had to a jury, which found:

(1) That Plaintiff sustained an injury to her right knee during March and April 1974;

(2) In the course of her employment with Robert R. Michlin, Inc.;

(3) Which injury was a producing cause of any total loss of use of her right leg;

(3A) The beginning date of such total loss of use was April 9, 1974;

(3B) The duration of such total loss of use of her right leg was permanent;

(4) The jury failed to find that such injury was a producing cause of any partial loss of use;

(5) That payment in any manner other than a lump sum will result in manifest hardship and injury to Plaintiff;

(6) That medical care was reasonably required by Plaintiff as a result of such injury;

(7) That Defendant carrier failed to furnish within a reasonable time medical care required by Plaintiff as result of such injury;

(8) That $2210.00 was the reasonable cost incurred by Plaintiff for such medical care; and

(9) The loss of use of Plaintiff's right knee was not caused solely by pre-existing conditions.

Based upon the jury verdict, the trial court awarded Plaintiff Ratcliff judgment against Defendant Standard Fire in the sum of 200 weeks at $63.00 per week from and after April 9, 1974, payable in lump sum, and in addition thereto the sum of $1874.95 for the above described medical expense, plus interest and costs, from which judgment Defendant appeals.

By its first seven points of error, Defendant-Appellant attacks Special Issues Nos. 6, 7, and 8, and the jury's answers thereto. In

answer to Special Issues 6, 7, and 8, the jury found that medical care was reasonably required by Plaintiff as a result of injury sustained while in Michlin's employ; that Appellant failed to furnish that medical care, and that Plaintiff incurred medical expenses pertaining to the injury in the amount of $2210.00. The trial court reduced this $2210.00 figure to $1874.95 (the amount prayed for in Plaintiff's pleadings) and awarded judgment for this latter amount for such medical expenses.

Appellant asserts the trial court erred in submitting Special Issue No. 6, (that medical care was reasonably required) saying that Plaintiff-Appellee testified that she did not incur any medical expenses; that there is no evidence and insufficient evidence to support the jury's answer to Special Issue No. 7 (that Defendant failed to furnish medical care within a reasonable time); and that there is no evidence and insufficient evidence to support the jury's answer to Special Issue No. 8 (that the reasonable cost of medical services was $2210.00). We overrule these contentions.

Plaintiff Ratcliff was a sewing machine operator who first suffered a compensable injury to her right knee in August 1972 which necessitated surgical repair on October 13, 1972, and then a second surgery on June 1, 1973. After the second surgery of June 1, 1973, Plaintiff's leg markedly improved and she returned to work for the predecessor of Defendant's subscriber, operating a sewing machine which did not require the use of her right leg. In December, 1973, Defendant's subscriber, Robert R. Michlin, acquired the then employer of Plaintiff, to wit, Color Compliment. In March 1974, Plaintiff was transferred to another sewing machine which required that she use her right knee to push against a lever to operate certain functions of the sewing machine. Shortly after being transferred to the new machine, Plaintiff began to experience pain and swelling in the area of her right knee where the knee pressed against the lever.

Plaintiff testified that as she continued to work, and especially during March and April 1974, her knee was markedly swollen, inflamed, discolored and painful, and she began to limp. On April 8, 1974, Plaintiff reported her condition to the plant supervisor and went to see Dr. J. R. Watson, the orthopedic surgeon who had twice before operated upon her right knee. Dr. Watson treated her knee and she then returned to her place of employment with a letter from Dr. Watson which she gave to the plant supervisor. After that time, Plaintiff discontinued working and she had not worked since.

On May 6, 1974, Plaintiff underwent surgery (for the third time) to her right knee, necessitated by the repetitious physical trauma caused by pressing her knee against the sewing machine lever. Dr. Watson testified that her condition of disability is permanent; that as regards activity which would require her to "stoop and lift and bend and use the right knee in doing the usual tasks of a workman, she would do much better to find something which causes less strain on her knee". He further stated that should she return to physical activity using her knee that, "Her knee would probably deteriorate faster if she did so", and that if she were asked about such matters by a prospective employer, he would advise that, " . . . she (Appellee) would run into problems if she went back to that type of work."

Plaintiff sought compensation benefits under the provisions of Article 8306, Section 20, Vernon's Annotated Civil Statutes, defining "Injury" to be construed to mean and include "Occupational Disease," which is defined therein as:

". . . damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; . . . ."

In addition thereto, Plaintiff sought recovery of the surgery of Dr. Watson relating to such "Injury" and the hospitalization for such surgery under the provisions of Article 8306, Section 7, V.A.C.S., which provides that:

"The employee shall have the sole right to select or choose the persons or facilities to furnish medical aid, chiropractic services, hospital services, and nursing and the association *shall* be obligated for same . . ."

After being unable to continue working, and in accordance with the directions of Dr. Watson, that she refrain from work, Plaintiff reported her injury to the plant supervisor, Mickey Smith.

Plaintiff's medical expenses were paid by a third party, to wit, International Insurance Company, and none of same was paid by Plaintiff. Dr. Watson testified that the hospitalization and surgery were necessary, and that the charge for his services in the amount of $950.00 was reasonable, and that his services were causally related to the injury sustained by Plaintiff while in the service of her employer. Mr. Beaman, Assistant Business Manager of Methodist Hospital, established that the hospital services rendered to Plaintiff in the amount of $924.25 were reasonable.

Defendant-Appellant urges that Plaintiff's recovery of the $1874.25 should be eliminated and deleted because the undisputed evidence shows that Plaintiff did not pay these medical bills, they having been paid by International Insurance Co., an insurance carrier for Plaintiff's employer. Defendant-Appellant contends that Plaintiff will be unjustly enriched if she is permitted to recover these medical expenses.

Moreover, Defendant-Appellant introduced into evidence the following interrogatory Number 28, served upon Plaintiff under Rule 168, Texas Rules of Civil Procedure, together with Plaintiff's answer thereto:

"Please give an itemized list of all expenses incurred by you since the date of the alleged accident which is the basis of this lawsuit, for medical care, hospital and doctor bills, nurses, drug expense, ambulance bills which you claim were necessitated by such alleged accident.

"Answer: None since all paid by International Insurance Co."

Defendant-Appellant argues that the foregoing answer by Plaintiff constitutes an admission by Plaintiff that she incurred no medical expense, that there is no fact issue presented thereby, and that she is therefore barred from recovery of such medical expenses. We do not agree.

Article 8306, Section 7, by the language hereinabove quoted, places the obligation upon the insurer to provide medical services for the employee. See *Transport Insurance Co. v. Polk* (Tex.1966), 400 S.W.2d 881.

Our Supreme Court has stated the rule governing the medical expenses in the case at bar as follows:

". . . when a claimant has notified the carrier of an injury, the carrier has the duty to move to furnish whatever aid is necessary as a consequence of that injury and the claimant need not make a special request for each item of expense." *Texas Employers Ins. Ass'n v. Chappell* (Tex. 1973), 494 S.W.2d 159.

■ The only notice the statute requires is notice of injury. It does not require specific notice of a claim for medical services; nor is a request for such services required as a condition precedent to the insurance carrier's responsibility. *Trinity Universal Ins. Co. v. Farley* (Tyler Tex.Civ. App.1966), 408 S.W.2d 776, no writ; *Texas Employers Ins. Ass'n v. Steadman* (Amarillo, Tex.Civ.App.1967), 415 S.W.2d 211, NRE; *Standard Fire Ins. Co. v. Simon* (Dallas, Tex.Civ.App.1971), 474 S.W.2d 530, no writ. In the case at bar, Plaintiff gave notice of injury on April 8, 1974, followed up by a letter from Dr. Watson, and then had surgery on May 6, 1974. There is ample evidence under this record to support the jury's answer to Special Issues Nos. 6, 7, and 8, that is, that Defendant-Appellant failed to furnish medical care to Plaintiff within a reasonable time, in the amount of $1874.95 (the amount allowed by the trial court's judgment).

■ Appellant's argument that Plaintiff's claim for medical expenses was defeated because they were paid by International Insurance Co., a third party, is with-

out merit. The rule is well established in workmen's compensation cases that where the claimant's medical expenses were paid by a third party, the claimant is not deprived of his right to recover the value of such services by the workmen's compensation carrier. *Cooper v. Argonaut Ins. Co.* (Dallas, Tex.Civ.App.1968), 430 S.W.2d 35, NRE (wherein the medical services were furnished by Medicare); *Northwestern National Ins. Co. v. Kirchoff* (Houston, Tex. Civ.App.1968), 427 S.W.2d 638, no writ (wherein the medical services were paid by group insurance carried by claimant's employer).

The above rule announced and applied in *Cooper* and *Kirchoff* is closely akin to the "collateral source" rule applied in cases other than workmen's compensation, which rule was applied in the following cases: *Texas Power and Light Co. v. Jacobs* (Waco, Tex.Civ.App.1959), 323 S.W.2d 483, NRE (gratuitous medical services furnished plaintiff by Veterans Administration); *American Cooperage Co. v. Clemons* (Fort Worth, Tex.Civ.App.1963), 364 S.W.2d 705, NRE (wherein plaintiff, a city employee, was furnished medical expenses paid for by the city); *Edmondson v. Keller* (Austin, Tex.Civ.App.1966), 401 S.W.2d 718, no writ (wherein plaintiff had his medical expenses paid by the "medical payments" portion of defendant's automobile policy); and *Sparks v. Dalton* (Fort Worth, Tex.Civ.App.1970), 458 S.W.2d 836, no writ (wherein plaintiffs had their medical expenses paid by the "medical payments" portion of defendant's automobile policy).

■ Lastly, with reference to Defendant-Appellant's contention that Plaintiff's answer to Interrogatory No. 28, hereinabove quoted, that she had incurred no medical expense, since paid by International Insurance Company: this argument is without merit. This Interrogatory No. 28 was propounded to Plaintiff under Rule 168 (Interrogatories) and not under Rule 169 (Admissions). Without detailing the differences between these two rules, suffice it to say that an interrogatory propounded under Rule 168, and answer made in response thereto by a party, is not to perform the function of, or have the effect of an admission under Rule 169. *Ford Motor Co. v. Draper* (Texarkana, Tex.Civ.App.1966), 401 S.W.2d 848, no writ; *Travelers Ins. Co. v. Wyatt* (Texarkana, Tex.Civ.App.1972), 488 S.W.2d 897, no writ.

In the case at bar, Plaintiff answered Interrogatory No. 28, concerning incurring of medical expenses: "None, since all paid by International Insurance Co." By this answer she gave an explanation as to how the expenses were paid and why she had not personally incurred them, which under this record would not in any way constitute an admission that would bar her recovery for these expenses. Appellant's points one through seven are overruled.

■ By points eight, nine, and ten Defendant-Appellant asserts the trial court failed to submit the statutory definition of injury, accidental injury, and occupational disease. We overrule these contentions. The trial court in its charge defined "Injury" in the language which sets out a definition of "Occupational Disease" in Article 8306, Section 20, V.A.C.S. The charge defined "Injury" as "damage or harm to the physical structure of the body occurring as a result of repetitious physical traumatic activities extending over a period of time and such diseases or infection as naturally result therefrom or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm." Section 20 specifically provides that the term "Injury" includes "Occupational Disease." By the jury's answer to Special Issue No. 2, Plaintiff's injury was limited ,to having been sustained in the course of her employment, as that term was defined in the court's charge. Plaintiff pleaded, and the proof showed, that her injury was caused by repetitious physical traumatic activities which took place in the course of Plaintiff's employment, that is, by her having to constantly and repeatedly press her right knee against the lever of the sewing machine. Rule 277 T.R.C.P., provides: "In submitting the case, the court

shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict . . . ." Under the definitions and special issues submitted by the trial court to the jury, we hold that the requirements of Rule 277 were complied with. See *Employers Commercial Union Ins. Co. v. Schmidt* (Eastland, Tex.Civ.App.1974), 509 S.W.2d 398, writ refused, NRE, by the Supreme Court in 516 S.W.2d 117. Appellant's points eight, nine, and ten are accordingly overruled.

■ By points eleven through sixteen, Appellant attacks the jury's findings that the injury on or about April 8, 1974, was a producing cause of the loss of use of Plaintiff's right leg. We overrule these contentions in the light of this record. We have hereinabove detailed enough of the evidence which in our opinion shows the legal and factual sufficiency of the evidence to support the jury's answers to Special Issues 3, 3A, and 3B.

■ By Appellant's seventeenth and last point it is contended the trial court erred in submitting Special Issue No. 1 ("Did Plaintiff sustain injury to her right knee during March and April 1974?"), arguing that the same was not definite in nature and did not inquire as to a date certain. We overrule this point. Occupational disease is an exception to the rule that there must be proof of "an undesigned, untoward event traceable to a definite time, place, and cause." *Olson v. Hartford Accident and Indemnity Co.* (Tex.1972), 477 S.W.2d 859, 860; *Hartford Accident and Indemnity Co. v. Contreras* (Houston, Tex.Civ.App.1973), 498 S.W.2d 419, NRE.

We have carefully considered all of Appellant's points and contentions. All are overruled. Judgment of the trial court is accordingly affirmed.

AFFIRMED.