Sylvia Lanzarin **MALTOS, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 04–95–00171–CV.

Court of Appeals of Texas, San Antonio.

Nov. 13, 1996.

Rehearing Overruled Dec. 11, 1996.

Alfred V. Sumpter, Ortiz & Sumpter, Del Rio, for Appellant.

Victor Roberto Garcia, Law Office of Victor Roberto Garcia, William J. Stroman, John R. Foster, Del Rio, Camile Glasscock Du-Bose, Assistant Regional Attorney, Texas Department of Human Services, Uvalde, Katherine A. Antwi, Assistant Attorney General, General Litigation Division, Austin, for Appellee.

Before CHAPA, C.J., and STONE and GREEN, JJ.

## OPINION

CHAPA, Chief Justice.

This is an appeal from the termination of the parent-child relationship between appellant and her four children. In seven points of error, appellant contends that the trial court erred in 1) denying appellant's motion to remove a court appointed guardian ad litem; 2) failing to give various requested jury instructions; and 3) accepting the jury's verdict that the parent-child relationships should be terminated. We affirm the judgment of the trial court.

### Factual and Procedural Background

Appellant is the mother of the four children at issue in this case: Jose, Juanita, Mayra, and Jorge. In April of 1991, appellant moved from Fort Worth, Texas, to Del Rio, Texas. The Fort Worth Office of Child Protective Services ("CPS") notified its Del Rio counterpart that, for two years, appellant had been under investigation in Fort Worth for suspected child abuse and neglect. A CPS caseworker in Del Rio was immediately assigned to appellant's case and an investigation was initiated.

Appellant's oldest daughter, Juanita, was removed from appellant's home in May of 1991. Juanita has a medical condition which results in seizures if not controlled by medication. However, appellant does not believe

that Juanita needs the medication.[1] After Juanita had a seizure at school, CPS officials were notified. CPS caseworker repeatedly impressed upon appellant that it was very important that Juanita be given her medication on a regular basis. However, Juanita continued to inform the school nurse that she was not being given her medication. Juanita also indicated that she was being physically abused at home.

During one of her seizures, Juanita called out the name "Santiago." Based on what Juanita said during the seizure, Juanita's aunt notified CPS that Juanita may have been sexually abused by her uncle, Santiago De le Cruz, in Fort Worth. A CPS caseworker questioned Juanita and learned that Santiago had, in fact, sexually abused Juanita while she was living in Fort Worth. Further investigation revealed that Santiago De le Cruz had been indicted and placed on deferred adjudication for sexually abusing Juanita. Appellant claims to know nothing about the abuse or the subsequent criminal action. During this investigation, Juanita also indicated that her mother often had sex with various men while she and her siblings were in the room.[2]

In May of 1991, Juanita had another seizure at school which resulted in her being taken to the emergency room. At this point, CPS officials believed that Juanita's health and safety were in jeopardy and she was placed in foster care.

In August of 1991, appellant was arrested and jailed as a result of an altercation.[3] CPS officials were notified that appellant's children were at the police station. A CPS caseworker arrived at the police station and interviewed the children regarding their home life. During this discussion, the children alleged that they had suffered abuse at the hands of their mother. Based on her

discussions with the children and on the previous CPS investigations, the caseworker believed it was in the best interest of the children that they be removed from the custody of their mother. Shortly thereafter, Jose, Mayra, and Jorge were placed in foster care.

While her children have been in foster care, appellant has visited with them four times. She has made no attempt to take advantage of any of the services CPS officials have offered her, including parenting classes, psychological and emotional therapy, or financial assistance.

In 1992, the Department of Protective and Regulatory Services filed a petition to terminate the parent-child relationship between the children and their parents.[4] The case was tried to a jury in April of 1994. At trial, the children's current foster family confirmed its desire to adopt all four children. Jose, Juanita, and Mayra testified at trial. Each of them stated that they did not want to return to their mother.

The jury determined that it was in the best interest of the children that appellant's parental rights be terminated. Appellant filed a motion for judgment notwithstanding the verdict and, in the alternative, motion to disregard jury findings. Following a hearing on the matter, the trial court denied appellant's motion and entered a decree terminating appellant's parental rights.

### Arguments on Appeal

#### A. Removal of Guardian Ad Litem

█ In her first point of error, appellant contends that the trial court erred in denying her motion to remove the court appointed guardian ad litem. One day before trial, appellant filed a motion to remove Victor

1. Prior to moving to Del Rio, appellant received a "divine calling" and became deeply religious. As a result of her religious beliefs, she determined that medication could not help Juanita. She believes that "the Lord who raises the dead and cures the sick [is] the only one who [can] cure her daughter."

2. Appellant does not believe her children have ever seen her engaging in sexual activity because they were supposed to be asleep when such activity occurred. She acknowledges having sexual relations with men while the children were in the room; however, she asserts that there was no alternative to such behavior because she and her children lived in a one room apartment.

3. The charges were eventually dismissed.

4. The children's biological fathers did not defend the suit.

Garcia as guardian ad litem for the children. Appellant contends that she sought legal advice from Garcia at the inception of this litigation. She states that she did not hire him only because she could not afford to do so. She claims that what she told Garcia about the case during their meeting affected his objectivity of the case, and he was, therefore, prejudiced against appellant. Appellant contends that Garcia's prejudice was evidenced by the fact that he stated, at a pretrial hearing, that he was aligned with the State's position.

At the hearing on appellant's motion, Garcia testified that he remembered seeing appellant in his office; however, he contended that she visited him only after he had been appointed guardian ad litem for the children. As such, Garcia told appellant that he could not represent her. Garcia testified that he never discussed the facts of the case with appellant. Garcia further testified that he was not biased against appellant. He stated that only after conducting an independent investigation, reviewing the State's trial notebooks, and working on the case for over a year did he come to the conclusion that termination was in the best interest of the children.

■ Rulings that relate to the conduct of a trial are within the trial court's broad discretion and will not be disturbed on appeal absent a manifest abuse of discretion. W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST. MARY'S L.J. 1014, 1099 (1993). The purpose of the guardian ad litem in termination proceedings is to represent the best interests of the children. *See* TEX. FAM.CODE ANN. § 11.10(a) (Vernon 1986).[5]

In denying appellant's motion to remove the guardian ad litem in this case, the court considered the guardian ad litem's function: "... the guardian ad litem is to do what he thinks is in the best interests of the children. That's his duty, and if he feels that the best interests of the children would be that—and that there is [sic] legal grounds for termination, why, of course there is nothing to stop a guardian ad litem from taking that

position." The trial court also observed that Garcia had been involved with the case for more than a year, had participated in several hearings, and had made an independent investigation. Regarding prior representation, the trial court noted the inconsistent testimony and chose to give more credence to Garcia's version of the facts, as is the court's prerogative. Under these circumstances, we can not say that the trial court, acting without any guiding legal principles, abused its discretion in denying appellant's motion to remove the guardian ad litem.

Further, there is no evidence to indicate that appellant was in any way prejudiced at trial by Garcia serving as guardian ad litem for the children. Garcia presented a brief opening statement in which he urged the jury to consider the best interests of the children in their deliberations. He also conducted brief cross-examinations of several witnesses. Otherwise, Garcia played a very limited role in the trial of this case. The action Garcia did take is consistent with his role as the representative of the children. Appellant has failed to demonstrate how she was harmed by Garcia serving as guardian ad litem. TEX.R.APP. P. 81(b)(1). Appellant's first point of error is overruled.

## B. Jury Instructions

In points of error two through six, appellant contends that the trial court erred in denying several of her requested jury instructions. Appellant submitted twenty-one proposed jury instructions. The trial court denied fifteen of the proposed instructions and granted the remaining six, as modified. Appellant complains of the denial of four of the instructions, contending that the jury would have ruled in favor of appellant if the instructions had been given.

■ Appellate courts must review the denial of a requested jury instruction under an abuse of discretion standard. *See Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex. 1974); *James v. Tex. Dept. of Human Services*, 836 S.W.2d 236, 245 (Tex.App.—Texarkana 1992, no writ). The essential question the trial court must face in ruling on a re-

5. Currently codified as TEX. FAM.CODE ANN. § 107.001(a) (Vernon 1996).

quested instruction is whether the instruction will aid the jury in answering the questions and reaching a verdict. *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied); Tex.R. Civ. P. 277.

■ In the present case, appellant requested the following instructions:

You are instructed that the involuntary termination of parental rights involves fundamental constitutional rights.

You are instructed that there is a strong presumption that a child's best interest will be served by maintaining the parent-child relationship.

You are instructed that the United States Constitution recognizes a fundamental right of family integrity.

You are instructed that Article I, Section 6 of the Texas Constitution provides that "all men have a natural and indefeasible right to worship a mighty God according to the dictates of their own conscience, race, credo, or national origin ... no human authority in any case, whatever, [sic] to control or interfere with the rights of conscience or matters of religion."

■ The charge actually submitted to the jury reads, in relevant part, as follows:

For the parent-child relationship between [appellant] and [the children] to be terminated, it must be proved by clear and convincing evidence that the parent has:

1. Knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

2. Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

For the parent-child relationship between [appellant] and [the children] to be terminated, it must *also* be proved by clear and convincing evidence that termination of the parent-child relationship is in the best interest of the child.

■ The charge further provided that:

A parent's religious beliefs, teachings, and practice, in and of themselves, are not grounds for terminating the parental rights of the parents to the child, unless the teachings and practices of the beliefs are illegal, immoral, or demonstrably harmful to the child.

The charge submitted correctly sets forth the appellee's burden of proof and the legal standard required before a parent's rights to her children may be terminated. It also adequately instructs the jury regarding the role the parent's religious beliefs should play in considering whether termination is appropriate.

Appellant has offered nothing to demonstrate how her requested instructions would have better assisted the jury in its deliberations. In fact, the requested instructions clearly comment on the weight of the evidence in violation of Tex.R. Civ. P. 277. All of the information appellant sought to convey to the jury through her requested instructions was adequately presented to the jury in an objective manner through the instructions actually given. We find no abuse of discretion on the part of the trial court in denying appellant's requested jury instructions. Appellant's second, third, fourth, fifth, and sixth points of error are overruled.

### C. Acceptance of Jury Verdict

■ In her seventh point of error, appellant contends that the trial court erred in accepting the jury's verdict. Involuntary termination of parental rights under the Family Code requires clear and convincing evidence that 1) the parent has engaged in any of the specific conduct enumerated in the Family Code as grounds for termination *and* 2) termination is in the best interest of the child. Tex. Fam.Code Ann. § 15.02(a) (Vernon 1986) [6]; *Texas Dept. of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). In the present case, after being properly instructed regarding the appellee's burden, the jury determined that the parent-child rela-

---

**6.** Currently codified as Tex. Fam.Code Ann. § 161.001 (Vernon 1996).

tionship between appellant and her four children should be terminated.

It is fundamental to our system of jurisprudence that the trial court may not substitute its judgment for that of a jury. *Anthony v. Mays,* 777 S.W.2d 200, 203 (Tex.App.— San Antonio 1989, no writ). Accordingly, a court may disregard a jury's verdict only where there is no evidence to support the jury's findings. *Spencer v. Eagle Star Ins. Co. of America,* 876 S.W.2d 154, 157 (Tex. 1994); *Mancorp v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); Tex.R. Civ. P. 301 and 324(c). In determining whether there is evidence to support the jury's findings, the appellate court must view the evidence in the light most favorable to the verdict, considering only the evidence and inferences which support the findings and rejecting all that is contrary. *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978); *see also D.O. v. Texas Dept. of Human Services,* 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ)(noting that higher burden of proof in termination proceeding does not alter appellate standard of review). If there is more than a scintilla of probative evidence in the record which supports the jury's findings, the court may not disregard the jury's verdict. *Central Texas Micrographics v. Leal,* 908 S.W.2d 292, 295 (Tex.App.—San Antonio 1995, no writ).

At trial, Carl Sherrouse, a CPS caseworker assigned to appellant's case, testified that he believed termination was in the best interest of Juanita. He based his belief on the fact that appellant refused to give Juanita medication to control her seizures and on evidence that Juanita had been sexually and physically abused. Nina Kelly, Juanita's school nurse, testified that Juanita was not receiving her medication and was having seizures at school. Dr. Lawrence O'Brien testified that Juanita could suffer serious harm if her medication was not properly and regularly administered.

Tammy Sheets, a clinical social worker who had worked with Juanita, testified that Juanita suffered from Post Traumatic Stress Syndrome. Sheets believed that termination was in Juanita's best interest. Toni Daniel, a CPS case worker assigned to appellant's case, testified that, based upon her investiga-

tion and work with Jose, Mayra, and Jorge, she believed that termination was in the best interest of the children. Debra Treadway, a Texas Department of Protective and Regulatory Services counselor, testified that, based upon her investigation, termination was in the best interest of the children. Jamie Solis, a CPS caseworker supervisor, testified that termination and adoption was in the best interest of the children.

Dr. John Sommer, a licensed therapist who treated Mayra and Jorge, testified that the children had suffered trauma as a result of abuse. Sommer testified that termination was in the best interest of Mayra and Jorge. Dr. Gerald Vincent, a counselor who worked with Juanita, testified that Juanita suffered from past physical and sexual abuse. Vincent agreed that termination was in Juanita's best interest. All of the caseworkers assigned to appellant's case testified that appellant would not cooperate with them in order to recover her children. At one point, appellant disappeared and her whereabouts were unknown for at least a year.

Sylvia Lanzarin, the children's aunt, testified that she had seen severe bruises on Jose. Appellant admitted hitting her children, but she testified that she "always had a reason" for doing so. She testified that she disciplined her children according to her religious beliefs. Further, appellant would not conclusively state that she would give Juanita her seizure medication if Juanita was returned to her. Instead, she stated that she would give Juanita the medication only if Juanita wanted it. She stated that the drugs would not have any effect and she would respect Juanita's "faith in the power of Christ to heal her."

Jose, Juanita, and Mayra testified that they were afraid of their mother. Each of them testified regarding abuse and each of them stated that he or she did not want to return to live with appellant.

We conclude the jury's verdict that the parent-child relationship between appellant and her children should be terminated is supported by clear and convincing evidence. Appellant's seventh point of error is overruled.

## Conclusion

Having found no error on the part of the trial court in denying appellant's motion to remove the guardian ad litem for the children, in denying appellant's requested jury instructions, and in accepting the jury's verdict, we affirm the judgment of the trial court.