**Louis David BOHLS, Individually and d/b/a LDB Enterprises; L.D.B. Enterprises, Inc.; and Beveled & Stain Glass Company, Appellants/Cross–Appellees,**

v.

**Charles Lee OAKES III and wife, Michelle Oakes, Appellees/Cross–Appellants,**

v.

**Bohls Equipment Company d/b/a Bohls Bearing and Power Transmission Service, Appellee.**

No. 04–00–00576–CV.

Court of Appeals of Texas, San Antonio.

Jan. 9, 2002.

Rehearing Overruled April 8, 2002.

Frederick R. Zlotucha, Law Office of Frederick R. Zlotucha, San Antonio, for appellants.

David W. Ross, Law Offices of Ralph Brown, P.C., Carl J. Kolb, Carl J. Kolb, P.C., Jeff D. Small, Law Office of Jeff Small, San Antonio, for appellees.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, KAREN ANGELINI, Justice.

Opinion by: CATHERINE STONE, Justice.

This is an appeal of a jury's award of damages under the Deceptive Trade Practices Act[1] (DTPA) to appellees Charles and Michelle Oakes in a case arising from faulty construction of a residence. We are asked to determine whether all elements of the DTPA claim were satisfied, whether the evidence was legally and factually sufficient to sustain the jury's verdict, and whether the trial court erred in limiting counsel's ability to make objections. We are also asked to determine if an award of attorney's fees to appellee Bohls Equipment Company as a sanction for bringing a groundless suit under the DTPA was er-ror. We affirm in part and reverse in part.

### FACTUAL & PROCEDURAL HISTORY

Charles bought a lot in Fair Oaks Ranch and hired architect Larry Raba to design a home. Raba met with several builders who made bids in the $300,000 range, more than the Oakeses could afford. At one of these meetings, Lee Voges was present. He later called the Oakeses and offered to submit a proposal; his original bid was for $225,000. After some negotiation, Voges bid $200,711 based on several alterations to the building plans, and the Oakeses accepted the bid. Some items in the bid had designated allowances. If the cost of materials exceeded the allowance, the Oakeses were responsible for paying the overage. Other items were identified as "fixed-cost" items, for which the Oakeses were not responsible if the cost exceeded what had been anticipated.

The Oakeses sought interim financing to cover the construction costs, but needed a financial statement from Voges to obtain it. Voges never provided the requested financial statement.[2] In the meantime, Voges was showing the Oakeses houses he had constructed, including one he built for appellant Louis David Bohls. As the Oakeses were leaving Bohls's residence, Bohls arrived at the home and recognized Michelle because she had once worked for one of Bohls's companies. He praised Voges's work as a builder, and spoke favorably about their lengthy history together. Not long after that, Bohls offered to provide the interim financing and the Oakeses agreed.

The construction did not go smoothly. The Oakeses were not satisfied with the

---

1. TEX. BUS. & COM.CODE ANN. § 17.46(a) (Vernon 1987).

2. The Oakeses later learned Voges had previously filed for bankruptcy; based on this, they believe no bank would have approved interim financing.

changes being made and were unwilling to pay for overages on fixed-cost items. Bohls was unhappy with their refusal to pay for these overages and threatened more than once to put the house up for sale or to foreclose on it. Materials purchased for and delivered to the Oakeses' building site were used on other houses Voges was building at the time he was constructing the Oakeses' home, workmen were diverted from the Oakeses' house to other houses under construction, the house was not completed on time, and the original certificate of occupancy was revoked because of construction defects.

Eventually, the house was completed and a certificate of occupancy was issued, but the Oakeses were still unhappy with the house because it had numerous defects. The Oakeses sued Voges and Bohls for breach of contract, quasi-contract, fraud, DTPA violations, usury, breach of fiduciary duty, and intentional infliction of emotional distress, seeking actual and exemplary damages, and attorney's fees. Voges invoked a defense under the Texas Residential Construction Liability Act, contending he was not given the opportunity to correct any mistakes.

The claims for breach of contract, fraud, and DTPA violations were submitted to the jury, which found (1) there was an agreement between Bohls, Voges, and the Oakeses to build the house, (2) Bohls and Voges breached the contract, (3) Bohls and Voges committed fraud, and (4) Bohls and Voges violated the DTPA. The jury awarded the Oakeses $64,500 in actual damages plus attorney's fees, but awarded nothing for mental anguish or exemplary damages.

The trial court rendered a judgment on the verdict and denied appellees' motions for JNOV and new trial. The trial court also awarded $9,000 in attorney's fees to Bohls Equipment Company, which was joined as a party in 1997 but nonsuited before trial, finding the suit groundless and basing the amount of the award on the jury's answer regarding attorney's fees. Bohls and Voges appealed the jury's verdict. The Oakeses cross-appeal the award of attorney's fees to Bohls Equipment. After Voges filed his notice of appeal, he settled with the Oakeses and is no longer a party to this appeal.

## OBJECTIONS DURING TRIAL

In issue one, Bohls contends the trial court erred by denying his counsel the right to make objections, requiring him instead to channel any objections through Voges's counsel. He argues the ruling was unprecedented, not authorized by any rule of evidence or procedure, and an impermissible comment on the evidence. The Oakeses contend the error was waived.

■ A trial court has the discretion to make rulings that govern the conduct of a trial, and we will not reverse the rulings unless there has been a manifest abuse of discretion. *See Maltos v. Texas Dept. of Protective & Regulatory Servs.*, 937 S.W.2d 560, 563 (Tex.App.—San Antonio 1996, no writ). There is an inherent tension between the obligation of an attorney to provide zealous representation, particularly in objecting to inadmissible evidence and testimony, and the power and duty of the trial judge to ensure that a trial proceeds smoothly. In discussing class actions, the Texas Supreme Court noted:

Although a goal of our system is to resolve lawsuits with "great expedition and dispatch and at the least expense," the supreme objective of the courts is "to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants under established principles of substantive law." This means that "convenience and economy" must yield to a paramount concern for a fair and impar-

tial trial. And basic to the right to a fair trial—indeed, basic to the very essence of the adversarial process—is that each party have the opportunity to adequately and vigorously present any material claims and defenses.

*Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 437 (Tex.2000).

It is clear from the record that the trial court would accept objections from only one attorney as each witness was questioned, and would not permit the attorneys to present multiple objections. Bohls's counsel asked the trial court on several occasions to reconsider her ruling limiting objections to one attorney, and his requests were denied. He also filed a written motion noting his objection and asking for a reversal of the ruling; the motion was denied. Counsel notified the trial court throughout trial that the defendants had "different issues" and that he had "to protect Mr. Bohls' rights, not [Voges's counsel]." When Bohls's counsel alerted the court that the effort to channel all objections through one counsel was "unworkable" because Voges's counsel was not making the objections he asked for, the trial court responded, "That's you-all's problem." The record shows that Bohls's counsel did object at times, despite the court's ruling, but was inhibited or prevented from objecting at other times.

■ Citing *Cooper v. Argonaut Ins. Co.,* 430 S.W.2d 35, 41 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.), Bohls contends it was clearly erroneous for the trial court to restrict his right to object. The Oakeses argue *Cooper* is distinguishable because in *Cooper,* unlike the instant case, the instruction limiting counsel's right to object was made in the jury's presence. Although the trial court's instruction in this case may not have been made in front of the jury, the harm caused by the trial court's ruling is the same. Moreover,

when Bohls's counsel was prevented from objecting, the jury could have drawn the conclusion Bohls alleges—that the defendants had a common interest or a "community of interest" despite the differing and sometimes conflicting nature of their defenses. We are persuaded that denying Bohls's counsel the right to lodge his own objections in such a blanket manner undermined his ability to present Bohls's case to the jury.

■ It is an attorney's right, "as well as his duty, to make such objections whenever he feels that his adversary is making an improper argument." *Id.* Further, when there are multiple defendants, as in this case, each defendant generally must lodge his own objections in order to preserve error. *See Southwell v. University of the Incarnate Word,* 974 S.W.2d 351, 353–54 (Tex.App.—San Antonio 1998, pet. denied); *but see Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 556–57 (Tex. App.—Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (Tex.1998) (permitting trial court to order joint objections to save time). Bohls's counsel was prevented from lodging his own objections. While a trial court necessarily has broad discretion to control trial proceedings, a fair trial should mean one conducted within the framework of procedural and substantive rules prescribed by law for the circumstances and parties of a given case. *See McGregor v. Clawson,* 506 S.W.2d 922, 929 (Tex.Civ.App.—Waco 1974, no writ). As applied to the circumstances and parties presented in *this* case, a fair trial required that Bohls be permitted to make objections in a meaningful manner. The trial court's ruling prevented Bohls's counsel from making meaningful objections. We hold the trial court abused its discretion when it denied Bohls this right.

The Oakeses contend that even if the trial court's procedural ruling is erroneous, harm cannot be shown under TEX. R.APP. P. 44.1. The Oakeses also argue that Bohls cannot complain on appeal about improper admission of evidence "when he did not avail himself of the appropriate procedures to protect himself at trial," claiming that error is waived because Bohls did not make either a formal bill of exception or a bystanders bill. Yet under the circumstances presented, it would be unrealistic to expect Bohls's counsel to recall each item of testimony he found objectionable, and then at a later time present a formal bill of exception or a bystanders bill. Likewise, it would be untenable and unduly burdensome to require counsel to purchase daily copy or some other form of immediate transcription of the witnesses's testimony so that he could review the testimony and then offer objections in a bill of exceptions. As regards documentary evidence, Bohls's counsel informed the trial court that he was unable to comply with the court's instruction that only Voges's counsel voice objections because the documents were not being tendered to him before questioning. We hold the error was not waived. Moreover, the error complained of prevented Bohls from properly presenting his case to this court; thus, it is reversible error. *See* TEX.R.APP. P. 44.1(a)(2).

We sustain issue one. Given this disposition, we need not address issue two, in which Bohls argues he was entitled to a mistrial, or issue three, in which he challenges the admission of certain testimony.

### DTPA CLAIMS

The DTPA protects a consumer from false, misleading, or deceptive acts or practices, from an unconscionable action or course of action by any person, and from the breach of an implied or express warranty in the conduct of any trade or commerce that is the producing cause of actual damage. TEX. BUS. & COM.CODE ANN. §§ 17.46(a), 17.50(a)(1), (2), (3) (Vernon 1987 & Vernon Supp.2001). In issue four, Bohls challenges the legal and factual sufficiency of the evidence in regard to every element of the DTPA and asks this court to reverse and render judgment that, as a matter of law, the Oakeses' DTPA claim is not viable. He contends (1) neither Charles nor Michelle was a "consumer" and Michelle had no standing to complain because she was a stranger to the transaction; (2) he was not a provider of goods and services; (3) he committed no act or omission that was a producing cause of damages; (4) he committed no unconscionable course of action; (5) he committed no "laundry list" violation; (6) he provided no warranty and he had no agreement with the plaintiffs; (7) he was not vicariously liable under any theory of recovery; (8) submission to the jury of question one—"Did Lee Voges d/b/a Voges Construction, LDB Enterprises, In., and/or Louis David Bohls engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to Charles or Michelle Oakes?"—was error; and (9) submission to the jury of question three—"Was the failure, if any, of Lee Voges d/b/a Voges Construction, LDB Enterprises, Inc., and/or Louis David Bohls to comply with a warranty a producing cause of damages to Charles or Michelle Oakes?"—was error. In issue five, he contends there was no competent evidence as to the amount of damages awarded by the jury. In issue six, he contends he is entitled to an award of attorney's fees for defending against a groundless DTPA claim.

To pursue a DTPA cause of action, a plaintiff must be a consumer; therefore, consumer status is an essential element of

a DTPA cause of action. *Mendoza v. American Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex.App.—San Antonio 1996, no writ). The question of consumer status under the DTPA is question of law for the court to decide. *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.). We therefore address that portion of issue four which deals with the Oakeses' status as consumers.

Bohls contends the Oakeses were not consumers because there was no legal relationship or written agreement between Bohls and the Oakeses, there was no transfer of goods or services founded on "valuable consideration," there was no evidence of a purchase or payment for services, and whatever services he may have provided were gratuitous. In addition, he argues Michelle was a stranger to the transaction and had no interest in the subject matter of the litigation until after suit was filed.

To qualify as a consumer, a plaintiff must meet two requirements: (1) the person must seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. *Id.* Consumer status is established merely by seeking to acquire services, even if the services are not actually acquired, and no money need change hands to establish consumer status. *Sears, Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 170 (Tex.App.—Fort Worth 1998, no pet.). Thus, it was not necessary for there to have been a written agreement, an actual purchase, or any consideration paid for Charles to be a consumer. It was enough that he sought to acquire Bohls's services in good faith. *See id.*

In addition, Michelle was also a "consumer" under the Act. Plaintiffs establish their standing as consumers by their relationship to the transaction, not by a contractual relationship with the defendant. *Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex.1985). Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's consumer status under the DTPA. *Id.* Thus, although the term "consumer" includes one who acquires goods or services by purchase or lease, the plaintiff need not herself be the one who purchases or leases the goods or services to be a consumer. *Id.; Lukasik*, 21 S.W.3d at 401. A third party beneficiary may qualify as a consumer of goods or services, as long as the transaction was specifically required by or intended to benefit the third party and the good or service was rendered to benefit the third party. *Lukasik*, 21 S.W.3d at 401. The relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the defendant's alleged misconduct. *Nations-Bank of Texas, N.A. v. Akin, Gump, Hauer & Feld, L.L.P.*, 979 S.W.2d 385, 392 (Tex.App.—Corpus Christi 1998, pet. denied). Here, Michelle was a third-party beneficiary of the transaction between Charles and Bohls by virtue of her relationship to Charles and her intent to occupy the home after it was built. She, too, was affected by the alleged misconduct.

We hold as a matter of law that Charles and Michelle were both consumers under the Act. The determination of the remaining DTPA elements, i.e., whether Bohls supplied goods or services and whether he committed any unconscionable act, and the determination of damages are fact issues to be decided by the jury. *See Lukasik*, 21 S.W.3d at 401. Accordingly, we decline to address the remainder of issue four, or issues five and six, as these will be addressed on remand.

## CROSS-POINT ON ATTORNEY'S FEES

Bohls Equipment was added as a party to the suit in 1997, but was nonsuited before trial. The jury found that attorney's fees to defend this suit were $9,000 at trial. Cross-appellants Charles and Michelle Oakes contend the trial court erred when it awarded these attorney's fees to Bohls Equipment Co. because there was no hearing on the motion for sanctions and no "good cause" stated in the order. To the contrary, the trial itself constituted a hearing of great length, and the court's judgment stated the suit was "groundless." A suit is groundless under the DTPA if it has no basis in law or fact. TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp. 2001). We review the trial court's judgment awarding attorney's fees pursuant to the DTPA under an abuse of discretion standard. See Barraza v. Koliba, 933 S.W.2d 164, 168 (Tex.App.—San Antonio 1996, writ denied).

Limitations had run by the time the Oakeses added Bohls Equipment to the suit, and there was virtually no evidence the company was involved save for a few invoices issued on Bohls Equipment letterhead. We hold the trial court did not abuse its discretion by awarding attorney's fees to Bohls Equipment.

We overrule the cross-point.

### CONCLUSION

We affirm that portion of the trial court's judgment awarding attorney's fees to Bohls Equipment. We reverse the remainder of the judgment and remand for further proceedings in the trial court.

Dissenting opinion by: KAREN ANGELINI, Justice.

I respectfully dissent, in part, to the majority's opinion. Any error the trial court made in restricting Bohls' attorney from making objections was harmless.

We can only reverse the trial court's judgment on the ground that it made an error of law if we conclude that the error probably caused the rendition of an improper judgment or it probably prevented the appellant from properly presenting the case to this court. TEX.R.APP. P. 44.1.

With regard to the court's restriction of Bohls' attorney's objections, a review of the record shows that any error in restraining Bohls' counsel from making objections was harmless. It is clear from the record that Bohls' attorney wanted to make objections himself rather than through Voges' attorney, but was prevented from doing so by the trial court. Nothing in the record, however, reflects any particular objection he would have made but was prevented from making, what testimony or evidence was admitted because he was prevented from objecting, or how any such testimony or evidence was harmful to Bohls. In fact, in his brief and during oral argument, Bohls did not argue that any particular harmful testimony or evidence was admitted. Instead, he argued that, because Voges' attorney was making objections for all defendants, the jury was given the impression that Bohls was, in some manner, aligned with Voges. In spite of his assertion, there is nothing in the record from which we can conclude that the jury was given such an impression or, if they were, that it was harmful to Bohls. Without a showing of harm, the error is not reversible.