Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★   ★   ★                                    ★   ★   ★

# MEMORANDUM OPINION

No. 04-08-00438-CV

Ray K. **HANSBERGER** and Connie B. Hansberger,
Appellants

v.

**EMC MORTGAGE CORPORATION**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-15378
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Sandee Bryan Marion, Justice
                  Phylis J. Speedlin, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:  July 29, 2009

AFFIRMED

In the underlying lawsuit, the trial court rendered a partial summary judgment in favor of

defendant, EMC Mortgage Corporation ("EMC"), on all but one of the claims asserted by the

plaintiffs, Ray K. Hansberger and Connie B. Hansberger.  After the Hansbergers non-suited their

remaining claim, the trial court granted EMC's motion to dismiss. This appeal followed.  In three

issues, the Hansbergers argue the trial court erred in granting EMC's motion for partial summary judgment and the trial court erred when it dismissed their suit because the summary judgment and non-suit did not resolve all of their claims. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2005, the Hansbergers sued EMC alleging various causes of action associated with the mortgage account on their home. In February 2006, before any deposition discovery had been conducted, EMC moved for summary judgment, the Hansbergers responded, and the trial court denied the motion on May 31, 2006. Following continuances and an attempt to mediate, the case was set for trial to commence on February 11, 2008.

In December 2007, seven weeks prior to trial and after depositions had been conducted, EMC moved for a partial summary judgment. At that time, the Hansbergers' live pleading specifically identified the following substantive causes of action: (1) violations of the Deceptive Trade Practices Act ("DTPA"); (2) common law fraud; (3) fraud in a real estate transaction under Texas Business and Commerce Code section 27; (4) negligence; (5) negligent misrepresentation; (6) negligent hiring, supervision, and management; and (7) breach of contract. EMC's motion for partial summary judgment addressed all of the Hansbergers' causes of action except for breach of contract.

Following a hearing, the trial court granted EMC's motion for partial summary judgment in its entirety. Subsequently, on the day of trial, the Hansbergers non-suited their claim for breach of contract. EMC then moved for dismissal of the entire suit on the grounds that all of the Hansbergers' causes of action were disposed of by either the granting of the partial summary judgment or the non-suit. The court granted the motion to dismiss, and this appeal ensued.

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

EMC moved for both a no-evidence and a traditional summary judgment on all of the Hansbergers' claims, except the breach of contract claim. The Hansbergers filed a response on the day of the summary judgment hearing.[1]

**A.      Cause of Action for Violations of the DTPA and Various "Tie-in" Statutes**

The Hansbergers alleged EMC violated the DTPA by engaging in various false, misleading, and deceptive acts. They also alleged that, by virtue of the DTPA violations, EMC also violated the various "tie-in" statutes. EMC moved for summary judgment on the DTPA claims on two grounds: (1) the Hansbergers are not "consumers" under the DTPA and (2) EMC's servicing of the loan does not constitute a "good" or "service" for purposes of the DTPA. EMC also asserted that because the Hansbergers' DTPA claims failed as a matter of law, so too did their "tie-in" claims.

To pursue a DTPA cause of action, a plaintiff must be a consumer. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a) (Vernon Supp. 2008). To qualify as a consumer under the DTPA, a plaintiff must "seek or acquire goods or services by purchase or lease" and those goods or services must form the basis of the complaint. *Bohls v. Oakes,* 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied); *see* TEX. BUS. & COM. CODE ANN. § 17.45(4). Whether a plaintiff qualifies as a

---

[1] The summary judgment hearing was set to commence on January 8, 2008 at 8:30 a.m. The Hansbergers were required to file a response at least seven days before the summary judgment hearing. TEX. R. CIV. P. 166a(c). The Hansbergers filed their response on January 8 at 9:00 a.m. After this appeal was filed, EMC moved (1) to strike the response from the appellate record on the grounds that it had been untimely filed without leave of court, or (2) alternatively, that this court not consider the response on the grounds that it was not considered by the trial court. In response to the motion to strike, the Hansbergers contend their response was timely because it had been on file since 2006, apparently in response to EMC's 2006 motion for summary judgment. We decline to hold that a response to an earlier-filed motion for summary judgment constitutes a timely-filed response when the moving party, at a subsequent point in time, later files another motion for summary judgment. A response to a motion for summary judgment may be late-filed, but only with leave of court. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex. 1996). Because the record on appeal here does not indicate the trial court granted leave for the Hansbergers' response that was filed on the day of the hearing, we presume the trial court did not consider the response. *See Benchmark Bank,* 919 S.W.2d at 663; *INA of Tex. v. Bryant,* 686 S.W.2d 615 (Tex. 1985). Also, nothing in the record indicates the trial court considered the response despite its untimely filing. Therefore, on appeal, we do not consider the response or attached evidence.

"consumer" under the DTPA is a question of law for the trial court to decide. *Bohls*, 75 S.W.3d at 479. Here, there is no dispute EMC did no more than service the Hansbergers' loan after the loan was assigned to EMC.[2] Therefore, the services provided by EMC served no purpose other than to facilitate a mortgage loan acquired from another lender, and therefore, were not, as a matter of law, a "good" or "service" contemplated by the DTPA. *Maginn v. Norwest Mortgage, Inc.*, 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no pet.) (holding that because "Norwest's ancillary services served no purpose apart from facilitating a mortgage loan . . . any services provided by Norwest were, as a matter of law, incidental to the contemplated mortgage loan; they were not an objective of the transaction . . . [therefore] appellants were not consumers for purposes of the DTPA."); *see also Allen v. Am. Gen. Fin., Inc.*, 251 S.W.3d 676, 694 (Tex. App.—San Antonio 2007, pet. granted) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."). Accordingly, the Hansbergers were not, as a matter of law, "consumers" under the DTPA. Therefore, the trial court did not err in rendering a traditional summary judgment in favor of EMC on the Hansbergers' DTPA claims.

The DTPA allows a consumer to bring a cause of action under the DTPA if he is granted that right by another law. TEX. BUS. & COM. CODE ANN. § 17.50(h). Certain statutes "tie in" to the DTPA such that a violation of the former is also a violation of the latter. Each of the tie-in statutes asserted in the Hansbergers' petition provide that a violation of the statute is a deceptive trade practice under the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 20.12 (Vernon 2009) (violation of

---

[2] In September 1990, the Hansbergers obtained the mortgage loan from Texas Homestead Mortgage Corporation. The loan was later transferred to Fleet Mortgage Corporation, and then transferred to the U.S. Department of Housing and Development ("HUD"). HUD later assigned the loan to EMC.

"Regulation of Consumer Credit Reporting Agencies" statute); TEX. BUS. & COM. CODE ANN. § 601.204 (violation of statute governing "Cancellation of Certain Consumer Transactions"); TEX. PROP. CODE ANN. § 41.006(b) (Vernon 2000) (violation of statute governing "Certain Sales of Homestead"); TEX. FIN. CODE ANN. § 392.404(a) (Vernon 2006) (violation of statute governing "Debt Collection"); TEX. FIN. CODE ANN. § 393.504 (violation of statutes governing "Credit Services Organizations"); former TEX. REV. CIV. STAT. ANN. art. 6573(b) (violation of "Residential Service Company Act"). However, the party bringing a claim under the DTPA for a violation of a tie-in statute must still satisfy the requirement of being a "consumer." Because the Hansbergers are not consumers under the DTPA, the trial court did not err in rendering a traditional summary judgment in favor of EMC on the Hansbergers' "tie-in" claims.

## B.    Negligence and Common Law Fraud Claims

The Hansbergers alleged EMC made material false representations and concealed or failed to disclose material facts, including false claims about HUD forbearance provisions, false claims regarding whether they had made their mortgage payments, and EMC communicated false information regarding the status of their loan. EMC moved for summary judgment on the negligence-based and fraud-based claims on the ground that any such claims arise from EMC's contractual obligation to service the Hansbergers' loan, and not as an independent tort. On appeal, the Hansbergers make a single argument: "Despite having been denied summary judgment on this claim [in 2006], EMC simply asserted the same claim again [in 2007]. Accordingly, the Hansbergers have already been found to have provided enough evidence to raise a genuine issue of material fact."

The Texas Rules of Civil Procedure do not limit the number of times a motion for summary judgment may be filed. *Anderson v. Bormann*, 489 S.W.2d 945, 947 (Tex. Civ. App.—San Antonio

1973, writ ref'd n.r.e.). Also, the denial of a motion for summary judgment is merely an interlocutory order and is in no way final; therefore, such an order does not finally decide any question before the trial court. *Id.* Thus, the denial of EMC's 2006 motion for summary judgment did not, in and of itself, prevent the trial court from granting EMC's 2007 motion for partial summary judgment. Therefore, we next consider whether EMC established its entitlement to summary judgment as a matter of law.

To determine whether the Hansbergers' tort claims can be maintained, we look to the substance of the causes of action rather than the manner in which they are pled. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 617-18 (Tex. 1986). Tort obligations are those imposed by law when a person breaches a duty that is independent from promises made between the parties to a contract; contractual obligations are those that result from an agreement between parties, which is breached. *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991).

We apply a two-part test to determine whether a claim based upon a contract may also give rise to independent tort causes of action. First, we examine whether the liability asserted arose solely as a result of a contractual duty or out of an independent obligation imposed by law. *Id.* at 494-95. If the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. *Id.* Second, we examine whether the injury asserted is other than an economic loss to the subject of the contract. *Id.* In determining whether there is a tort action, a breach of contract action, or both, the nature of the injury most often determines which duty

or duties are breached. *Jim Walter Homes*, 711 S.W.2d at 618. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Id.*

With these guidelines in mind, we consider what conduct on EMC's part the Hansbergers alleged as the cause of their injury. All of the Hansbergers' allegations are premised on their contention that "EMC engaged in an intentional scheme to use deceit, deception, fraud, misrepresentations, and coercion for the purpose of forcing the plaintiffs into default so that EMC could obtain additional revenue to which EMC was not entitled, and so that EMC could ultimately wrongfully take their home away from them." The Hansbergers alleged they were repeatedly denied timely credit for their payments, which in turn, served as EMC's reason for applying additional fees to their mortgage account.

Under their negligence claim, the Hansbergers allege EMC owed them "a duty to perform and/or provide services in a manner consistent with reason . . . [and] EMC failed to exercise ordinary care in performing such duty." Under their negligent misrepresentation claim, the Hansbergers alleged EMC "supplied false information . . . [and] such information was supplied [to them by EMC] for [their] guidance . . . [and EMC] failed to exercise reasonable care or competence in obtaining or communicating such information." As for their negligent hiring, supervision, and management claim, the Hansbergers alleged EMC owed them a duty to perform and/or provide services in a manner consistent with reason, and EMC owed them a duty "to exercise ordinary care in the hiring of competent employees and in the supervision and management of [those] employees . . . [and EMC] failed to use ordinary care in these respects . . . ." As recovery for these various claims, the Hansbergers alleged they sustained damages for mental anguish, as well as economic and actual

damages in the form of out-of-pocket expenses, loss of credit and damage to their credit reputation, and damages in the form of interest and finance charges.

We conclude EMC's alleged conduct would give rise to liability only if such conduct breached an obligation imposed by the contract to service their mortgage loan, rather than by operation of law. Therefore, the trial court did not err in rendering a traditional summary judgment in favor of EMC on the Hansbergers' claims for fraud; negligence; negligent misrepresentation; and negligent hiring, supervision, and management.

**C.      Fraud in a Real Estate Transaction Claim**

The Hansbergers alleged EMC's false representations and/or promises constituted fraud in a real estate transaction. EMC moved for summary judgment on the grounds that the assignment of the loan to EMC for servicing was not a "transaction involving real estate" because EMC played no role in the Hansbergers' acquisition of their residence. Texas Business and Commerce Code section 27.01 provides a statutory cause of action for fraud in real estate and stock transactions. TEX. BUS. & COM. CODE ANN. § 27.01(a) (Vernon 2009). Section 27.01 applies only to misrepresentations of material fact made to induce another to enter into a contract for the sale of land or stock. *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied). A loan transaction, even if secured by land, is not within the scope of the statute. *Id.*; *cf. Greenway Bank & Trust v. Smith,* 679 S.W.2d 592, 596 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (statute makes no mention of any application to guaranty agreements, secured by real estate, or to a party who "merely" loaned money for the purchase of real estate). Because there was neither a contract for, nor a sale of, land or stock between the parties involved in this case, section 27.01 does

not apply. Therefore, the trial court did not err in rendering a traditional summary judgment in favor of EMC on this claim.

## MOTION TO DISMISS

In their first two issues, the Hansbergers argue that one of their causes of action, their claim for unreasonable debt collection, was not resolved by the partial summary judgment or by the non-suit of their breach of contract claim. Therefore, the Hansbergers argue the trial court erred when it dismissed their entire suit before a trial on the merits. EMC responds the Hansbergers did not sufficiently plead a cause of action for unreasonable debt collection.

Ordinarily, we review a trial court's ruling on a motion to dismiss for an abuse of discretion. However, the characterization of a plaintiff's claim is a question of law. *See Murphy v. Gruber*, 241 S.W.3d 689, 692 (Tex. App.—Dallas 2007, pet. denied) ("Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court."); *Greathouse v. McConnell,* 982 S.W.2d 165, 172-73 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (court had to decide precise nature of claims alleged before considering grounds asserted in summary judgment motion). When the issue on appeal involves a question of law, such as here, we review the trial court's decision de novo. *See Barber v. Colo. Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex. 1995); *Murphy,* 241 S.W.3d at 692.

Any pleading that sets forth a claim for relief must contain a statement of the cause of action sufficient to give the pleader's adversary fair notice of the claim involved. TEX. R. CIV. P. 47(a). Here, the Hansbergers' first amended petition contains a section entitled "Facts," under which they list, in separate numbered paragraphs, eighteen factual allegations. One of the allegations is almost

a page long and includes, in the middle of the paragraph, the following sentence: "Even more disturbing, [EMC] repeatedly sought to take further unfair advantage of the Hansbergers by repeatedly subjecting the Hansbergers to unjustifiable threats of foreclosure and abusive and harassing measures of debt collection as a means toward ensuring the collection of all of the above referenced fees/charges, when, in fact, said fees/charges were without basis." Following the "Facts" section are several sections each separately titled as a specific cause of action. Each section stating a cause of action begins with the same sentence: "The plaintiffs replead all of the factual allegations stated above . . . ." None of these paragraphs bear a title referencing an unreasonable debt collection claim, nor does the substance of any of these paragraphs allege unreasonable debt collection as a basis for relief. Therefore, we conclude, as a matter of law, that the Hansbergers did not plead unreasonable debt collection as a cause of action.[3] Accordingly, the trial court did not err in granting EMC's motion to dismiss.

## CONCLUSION

For the reasons stated above, we overrule the Hansbergers' issues on appeal[4] and we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

---

[3] On appeal, the Hansbergers contend EMC failed to file special exceptions. When a plaintiff's petition omits an element of a cause of action or fails to state it with sufficient clarity, a defendant must specifically except to the pleading or it has waived its complaint. TEX. R. CIV. P. 90; *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 233 (Tex. App.—San Antonio 2001, pet. denied). However, when a plaintiff fails to plead a viable cause of action, the defendant is not required to file special exceptions that would suggest to the plaintiff all possible causes of action that could be filed against the defendant. *Crabtree v. Ray Richey & Co.*, 682 S.W.2d 727, 728 (Tex. App.—Fort Worth 1985, no writ).

[4] Because we affirm the traditional summary judgment rendered on the Hansbergers' claims, we do not address their issues as they relate to EMC's motion for a no-evidence summary judgment on these same claims.