



## MEMORANDUM OPINION

No. 04-11-00285-CV

Ralph **CARPENTER**,
Appellant

v.

Darryl **DE LA CRUZ** and Beatrice Vasquez,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2001-CI-10522
Honorable Renée F. McElhaney, Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed:  July 25, 2012

AFFIRMED

Ralph Carpenter appeals the trial court's judgment awarding Beatrice Vasquez damages

for her DTPA claims based on a jury's findings.  Carpenter asserts the trial court erred in

denying his motion to dismiss Vasquez from the case because she was not a consumer as defined

by the DTPA.  Carpenter also challenges the sufficiency of the evidence to support (1) the jury's

finding that he engaged in deceptive and misleading acts, and (2) the amount of damages and

attorney's fees the jury awarded. Because the issues in this appeal involve the application of well-settled principles of law, we affirm the trial court's judgment in this memorandum opinion.[1]

## BACKGROUND

The facts are complicated but necessary to understand the basis of Carpenter's complaints on appeal. Vasquez's nephew, Daryl De La Cruz, offered to give Vasquez a lot he owned on which she could build a house. In order to finance the construction of the home, Vasquez sold Carpenter four lots owned by her and her husband[2] for $150,000.[3] Vasquez retained Joe Garcia to build the house, and she paid Garcia approximately $79,000; however, Garcia did not complete the construction, and some of his construction work needed repair. Although the construction of the house was incomplete and in need of repair, Vasquez moved into the house.

According to Vasquez's testimony, Carpenter offered to complete the construction, make the necessary repairs, and build a driveway for $40,000. In July of 1999, De La Cruz went to a bank or title company, believing he was signing a deed to convey his lot to Vasquez; however, the deed he signed conveyed the property to Carpenter. According to Carpenter's testimony, the property was conveyed to him to enable him to obtain a loan to complete the construction on the house. After Carpenter failed to make the needed repairs and complete the construction, and after Vasquez discovered that ownership of the property had actually been conveyed to Carpenter, Vasquez and De La Cruz sued Carpenter in 2001, asserting numerous causes of action. Vasquez and De La Cruz's DPTA claims were tried to a jury in 2011. Based on the jury's findings, the trial court rendered judgment in favor of Vasquez.

---

[1] In their brief, the appellees raise a cross-point challenging the trial court's refusal to award them rescission as a remedy. Because the appellees did not file a notice of appeal, however, they are precluded from raising issues seeking to alter the trial court's judgment. *See* TEX. R. APP. P. 25.1(c); *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002).

[2] Vasquez's husband was hospitalized during this period of time, and he passed away in 2000.

[3] Vasquez testified that Carpenter paid her only $130,000 of the $150,000.

## CONSUMER STATUS

To qualify as a consumer under the DTPA, a plaintiff must meet two requirements: "(1) the person must seek or acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint." *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied). Carpenter contends that Vasquez was not a consumer because (1) no contract existed between Carpenter and Vasquez, (2) Vasquez did not own the property for which she sought his services, and (3) Vasquez sought a loan from him not services.

With regard to Carpenter's assertion that no agreement existed between the parties, "[p]laintiffs establish their standing as consumers by their relationship to the transaction, not by a contractual relationship with the defendant." *Id*. Therefore, consumer standing depends on the nature of the transaction, not on the existence of a contract.

Similarly, the ownership of the property does not affect Vasquez's consumer status. In this case, the transaction in question related to the services Vasquez sought to acquire from Carpenter for completing the construction of her house, not to the ownership of the lot on which the house was to be built. The evidence established that Vasquez sought and paid for Carpenter's services to complete the construction and repair of the house in which Vasquez would and eventually did live.[4] *See id*.

Finally, Carpenter contends that Vasquez sought a loan from him not services; however, Carpenter did not raise this contention as a ground for dismissal in his motion. Moreover, Vasquez testified that she agreed to pay Carpenter $40,000 for the services necessary to complete the construction of the house, not to obtain a loan.

---

[4] With regard to Carpenter's complaint regarding the rights of the estate of Vasquez's deceased husband, this complaint would not affect Vasquez's standing as a consumer independent of the rights of the estate, and the jury charge limited the damage award to Vasquez's damages.

**SUFFICIENCY OF THE EVIDENCE**

In his remaining issue, Carpenter challenges the sufficiency of the evidence to support various findings made by the jury. We review a legal sufficiency or "no evidence" challenge under the well-established principles set forth in *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Reviewing the evidence in the light most favorable to the finding and indulging every reasonable inference that would support it, we sustain a no-evidence challenge only if the record reveals:

> (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact.

*Id*. at 810; *accord id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. at 819. When reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence, and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## A.      Deceptive or Misleading Acts

Carpenter challenges the sufficiency of the evidence to support the jury's finding that he engaged in deceptive or misleading acts. Carpenter, however, does not challenge the sufficiency of the evidence to support the jury's finding that he engaged in an unconscionable action or course of action. Because the jury's second finding was a separate liability finding that independently supports the judgment against Carpenter, we need not further address this issue. *See* TEX. R. APP. P. 47.1 (instructing court of appeals to only address issues raised and necessary to the final disposition of the appeal).

**B.** **Damages**

The jury awarded Vasquez $157,890.00 as the amount she paid Carpenter minus the value of the benefits she received. The jury also awarded Vasquez $3,000.00 for mental anguish sustained in the past. Finally, the jury awarded Vasquez $50,000.00 because Carpenter's conduct was committed knowingly and/or intentionally.

With regard to the economic damages, Vasquez testified that she paid Carpenter the following: (1) $10,000.00 from the sale of property in Seguin, (2) forgiveness of $20,000.00 of the balance owed by Carpenter for the four lots sold to him, (3) $20,000.00 from a loan she obtained from a friend, (4) $32,000.00 from the balance remaining of the $130,000.00 she received from Carpenter for the four lots, and (5) two to three years of monthly payments in the amount of approximately $685.00. In addition, De La Cruz testified that he paid $10,000.00 for the lot, and Carpenter did not pay him anything when the property was conveyed to him as opposed to Vasquez. Vasquez and De La Cruz also testified that the value of the property which was then owned by Carpenter was $150,000.00. Vasquez testified that she had received two offers to sell the house for that amount. Accordingly, the $157,890.00 in damages awarded by the jury was within the range of damages established by this testimony.

"[T]o obtain mental anguish damages under the DTPA, the plaintiff must either (1) introduce direct evidence of the nature, duration, and severity of his mental anguish, establishing a substantial disruption in his daily routine; or (2) present evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *CA Partners v. Spears*, 274 S.W.3d 51, 76 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). Texas courts "have held that evidence of a claimant's physical and emotional state, coupled with his/her inability to eat

and sleep, constitutes legally and factually sufficient evidence to support the award of mental anguish damages." *Id*.

Vasquez testified that the situation with the house prevented her from sleeping especially after she discovered that Carpenter owned the house. Vasquez's doctor prescribed medicine to calm her. De La Cruz testified that Vasquez tried to cover up the holes and damage to the house with plants and pots because she was ashamed for people to see the house. Although Vasquez opened her prior home to visitors, she would only allow really close family members to visit the new house. De La Cruz testified that he had seen Vasquez in pain, crying, and unable to sleep because of the condition of the house and the uncertainty of her ownership. De La Cruz testified that Vasquez used to be vibrant and alive, but, with the uncertainty of whether she owned her house, her life was "kind of dimming." This testimony is legally and factually sufficient to support the award of $3,000.00 in mental anguish damages.

With regard to damages awarded because Carpenter's conduct was committed knowingly and/or intentionally, the jury could have awarded a total of up to three times the amount of the economic damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (West 2011). Carpenter does not challenge the jury's finding that his conduct was intentional and/or knowing, and the $50,000.00 awarded by the jury was within the permissible range for an additional damage award. *See id*.

## C. Attorney's Fees

The determination of the amount of attorney's fees that are reasonable and necessary is a question of fact for the jury. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Falls Cnty. Water Control & Improvement Dist. No. 1 v. Haak*, 220 S.W.3d 92, 94 (Tex. App.—Waco 2007,

no pet.). Factors to be considered in determining the amount of reasonable attorney's fees include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2011) (TEX. STATE BAR R. art. X, § 9) (alteration in original)); *Haak*, 220 S.W.3d at 94. Evidence need not be presented on each of these factors. *Haak*, 220 S.W.3d at 94.

Vasquez's attorney, John S. Dwyre, testified that the case had been "readied for trial three times," and the nine-year period the case had been pending was a key factor in the amount of the attorney's fees. Dwyre also testified that taking the case over from another attorney and the absence of documents complicated the case. Dwyre testified that he is board certified in consumer and commercial law and in civil trial, and he charged $300 per hour for his services. Dwyre testified that the total amount due for his services was $78,611.25, based on 342.7 hours of work. Dwyre testified that approximately fifteen hours of his work included in that total were for nonstatutory claims for which attorney's fees are not recoverable; therefore, the total amount of his fees for statutory claims was $73,911.25. Dwyre testified that his fees were reasonable, necessary, and customary. Because one continuance of the case was due to his undergoing surgery, Dwyre testified that $10,000 should be deducted from the total fee, making the total

amount of reasonable and necessary attorney's fees $63,911.25. Dwyre also testified regarding reasonable and necessary appellate attorney fees. On cross-examination, Dwyre testified that his contract was not a contingency contract, and Vasquez had made payments on his fee. Dwyre's testimony is legally and factually sufficient evidence to support the jury's award of $63,000.00 in attorney's fees for representation at trial, $22,000.00 for representation through appeal to the court of appeals, and $11,000.00 for representation through appeal to the Supreme Court of Texas.

## CONCLUSION

The trial court's judgment is affirmed.

Rebecca Simmons, Justice