

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-07-464-CV**

IN THE INTEREST OF T.H. AND R.R.H.,
CHILDREN

-----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I. INTRODUCTION

Appellant J.H. appeals the termination of his parental rights to his children, T.H. and R.R.H. In eleven issues, J.H. argues that the evidence is legally and factually insufficient to support the termination order, that the trial court abused its discretion and infringed upon his constitutional rights by

---

[1] *See* Tex. R. App. P. 47.4.

proceeding with part of the termination trial in his absence, and that family code sections 263.405(b) and 263.405(i) are unconstitutional. We will affirm.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

J.H. and A.S. had a five year volatile, "strifeful" relationship. They never married, they lived together discontinuously, and domestic violence and illegal narcotics use, which included marijuana and methamphetamines, occurred in the relationship.

J.H. and A.S. had two children together: T.H., a son, and R.R.H., a daughter. R.R.H. was born at twenty-five weeks' gestation and tested positive for THC and marijuana. At the time of trial, T.H. was four years old and R.R.H. was three years old. Until their removal, T.H. and R.R.H. always lived with J.H. and A.S. or J.H. when he and A.S. separated.

In June and July 2006, CPS received two reports that J.H. and A.S. were using drugs in front of T.H. and R.R.H. and that T.H. and R.R.H. were wandering the neighborhood unsupervised for several hours. CPS "safety planned" for the children to be placed with J.H.'s mother, B.H., but it eventually discovered that the children were back in J.H.'s care sometime in late July or early August 2006. CPS additionally learned that there had been seven domestic violence calls at J.H.'s residence between June and August 2006.

2

The Texas Department of Family and Protective Services ("TDFPS") removed T.H. and R.R.H. from J.H.'s care and filed its petition for protection of children, for conservatorship, and for termination in suit affecting the parent-child relationship in August 2006. At the time of the removal, T.H. was naked and "very dirty." R.R.H. was dirty, wore a condom on her wrist as a bracelet, and had a rash on her face.[2]

CPS issued service plans to both J.H. and A.S. TDFPS's initial plan was to eventually return T.H. and R.R.H. to J.H., but J.H.'s July and October 2007 hair follicle tests came back positive for amphetamines and methamphetamines, and CPS learned that J.H. had failed to complete a batterer's intervention program that he had been ordered to complete.

The bench trial was on November 5, 14, and 15, 2007. J.H. was arrested and incarcerated sometime between November 5 and November 14, and he was consequently absent from trial on November 14 and part of November 15. The trial court issued a bench warrant, and J.H. returned to trial on November 15.

The trial court entered an order terminating J.H.'s parental rights to T.H. and R.R.H. It found by clear and convincing evidence that J.H. had knowingly

---

[2] J.H. claimed that R.R.H. had a ponytail band on her wrist.

3

placed or knowingly allowed T.H. and R.R.H. to remain in conditions or surroundings which endangered their emotional or physical well-being and that he engaged in conduct or knowingly placed T.H. and R.R.H. with persons who engaged in conduct which endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E) (Vernon Supp. 2008). The trial court also found by clear and convincing evidence that termination of the parent-child relationship between J.H. and T.H. and R.R.H. was in the children's best interest. *See id*. § 161.001(2). This appeal followed.

### III. EVIDENTIARY SUFFICIENCY

In his first six issues, J.H. challenges the legal and factual sufficiency of the evidence to support the trial court's section 161.001(1) and (2) conduct and best interest findings.

### A. Standards of Review

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional

4

and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently — to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by

clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied). It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (Vernon 2002).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to

6

termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child. *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. If we reverse on factual sufficiency grounds, then we must detail in our opinion why

7

we have concluded that a reasonable factfinder could not have credited disputed evidence in favor of its finding. *J.F.C.*, 96 S.W.3d at 266–67.

**B.     Sufficient Evidence—Section 161.001(1)(D) and (E) Findings**

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(D). Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Boyd*, 727 S.W.2d at 533.

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. Tex. Fam. Code

8

Ann. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *D.T.*, 34 S.W.3d at 634.

The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Boyd*, 727 S.W.2d at 533; *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re J.A.*, No. 02-05-00454-CV, 2006 WL 3114434, at *5 (Tex. App.—Fort Worth Nov. 2, 2006, no pet.) (mem. op.). As a general rule, conduct that subjects a child to a life of uncertainty and instability also endangers the child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied).

Because the evidence pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a consolidated review. *In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126. The evidence demonstrates that J.H. has engaged in conduct that subjected T.H. and R.R.H. to a life of uncertainty and instability. Specifically, the evidence shows that J.H. used illegal drugs both before and after TDFPS removed T.H. and R.R.H. from his care. J.H. denied having a drug problem and denied using drugs while caring for T.H. and R.R.H., but he admitted that he had used heroin, methamphetamines, cocaine, and marijuana in the past. J.H. admitted using methamphetamines sixteen or seventeen months before trial, which was before TDFPS removed the children from his care. A.S. testified that J.H. used methamphetamines and marijuana. J.H. took a hair follicle test on July 18, 2006; July 5, 2007; and October 22, 2007. The July 2006 test was negative for illegal substances, but the July and October 2007 tests were positive for amphetamines and methamphetamines. J.H. also told a CASA worker that a hair follicle test that he had performed on his own came back positive.

A.S. resided with J.H. and the children on and off over the course of her five year relationship with J.H. R.R.H. was born at twenty-five weeks' gestation and tested positive for THC and marijuana. A.S. admitted that she has a drug problem and that her drug of choice has been marijuana.

10

J.H. admitted that domestic violence had occurred during his relationship with A.S. A.S. testified that J.H. has punched and hit her and that she has gone to a shelter as a result of the domestic violence. A.S. recounted that there had been five or six instances of family violence between her and J.H. A.S. drafted an affidavit for TDFPS in which she stated that she had "grave concerns regarding my family" due to domestic violence and drug abuse. Between June and August 2006, there were seven domestic violence calls at J.H.'s residence. In June 2007, J.H. entered a plea of nolo contendere to a charge of assault bodily injury to a family member (A.S.); the offense had occurred in September 2006. J.H. exhibited anger issues that concerned others; for example, he had a number of outbursts during visits with the children if he thought the visit was too short.

On the first day of trial, J.H. testified that he had a warrant out for his arrest because his probation for the September 2006 offense had been revoked. Sometime after the first day of trial but before the second day of trial, J.H. was arrested and scheduled to be incarcerated for fifty days. J.H.'s mother agreed that she has bailed J.H. out of jail more than five times but less than ten times.

J.H.'s service plan required him to maintain a stable living environment, appropriate housing, and employment and to complete a batterer's intervention program, among other things. J.H. denied having more than five residences

11

over the last five years, but he admitted that he had stayed in a hotel for a "temporary transitional period." A police officer who responded to the report that T.H. and R.R.H. were wandering the neighborhood unsupervised described the residence where J.H. was living as "genuinely dirty" and in disarray. There were dishes with half-eaten food, flies around the dishes, and screwdrivers and knives "well within the reach of the children." At the time of the removal, T.H. was naked and "very dirty," and R.R.H. was dirty, wore a condom on her wrist as a bracelet, and had a rash on her face. While J.H. testified that he has a job waiting for him after he is released from jail, a CPS caseworker testified that J.H. never provided her with proof of employment. According to the caseworker, J.H. was terminated from a batterer's intervention class in February 2007, but at trial he produced a certificate of completion for the class dated October 2007, which was just before trial began in November 2007. J.H. lied to the caseworker that he had completed the program at an earlier time.

Based on our review of the entire record, we conclude that a factfinder could reasonably form a firm belief or conviction that J.H. had engaged in conduct consistent with the trial court's subsection 161.001(1)(D) and (E) findings. Therefore, we hold that the evidence is legally and factually sufficient to support the trial court's section 161.001(1)(D) and (E) findings. *See* Tex.

12

Fam. Code Ann. § 161.001(1)(D), (E).  We overrule J.H.'s first, second, third, and fourth issues.

## C.    Sufficient Evidence—Best Interest Finding

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (Vernon 2002).  There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the future;

(3)    the emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist these individuals to promote the best interest of the child;

(6)    the plans for the child by these individuals or by the agency seeking custody;

(7)    the stability of the home or proposed placement;

(8)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

13

(9)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

Here, J.H. testified that he has been the primary parent caring for T.H. and R.R.H. since they were born; that he has always provided the children with food, clothing, and housing; and that he has been continually employed since T.H. was born. He testified that his visits with T.H. and R.R.H. when they were in CPS's custody went "wonderful," and a CASA worker who observed J.H. interact with the children opined that the children "obviously love [J.H.]." When J.H. was working, the children stayed at a day care that J.H. claimed was "written up in a magazine as being one of the top 10 in the U.S." J.H. testified that he would check the children into a pre-kindergarten program if they were returned to him after the trial. In addition to the services that J.H. completed pursuant to his service plan, he testified that he has been attending

14

a "self-based recovery" program at a church that is geared towards substance abuse treatment.

J.H.'s mother testified that J.H. is a loving, caring father that puts T.H. and R.R.H. first. She affirmed that she would be willing to take care of the children on a temporary, but not permanent, basis and to help J.H. any way she could. She did not think that J.H.'s parental rights should be terminated.

T.H. and R.R.H.'s caseworker, however, testified that TDFPS's unrelated adoption permanency plan for the children is in their best interest. She expressed concerns about returning the children to J.H. because of the circumstances relating to his substance abuse, domestic violence, anger management, employment, transportation, and living arrangements. She opined that J.H. did not have the parenting ability to raise T.H. and R.R.H. and that he could not provide a safe and healthy environment for them. The caseworker agreed that granting the petition to terminate J.H.'s parent-child relationship with the children would ensure permanency for the children in a structured, safe environment.

The CASA worker testified that T.H. and R.R.H. had a lot of anger issues and were not used to "structure" after removal but that they were doing "wonderful" now. She testified that the children were participating in play therapy because of their anger issues, and she expressed concern about J.H.'s

15

drug abuse, his refusal to acknowledge the drug abuse, and his own anger issues. The children no longer need to take the medications they had previously been taking.[3]

Considering the entire record, including evidence of J.H.'s continued substance abuse and failure to supervise the children, the factors including the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one weigh in favor of termination. *See Holly*, 544 S.W.2d at 371–72. Thus, based on our review of the entire record, we conclude that a factfinder could reasonably form a firm belief or conviction that termination of J.H.'s parental rights to T.H. and R.R.H. is in T.H.'s and R.R.H.'s best interest. We hold that the evidence is legally and factually sufficient to support the trial court's section 161.001(2) best interest finding. *See* Tex. Fam. Code Ann. § 161.001(2). Accordingly, we overrule J.H.'s fifth and sixth issues.

---

[3] T.H. had been taking lithium, Zyprexa, Clonidine, and another mood stabilizer. R.R.H. was on Clonidine.

16

## IV. TRIAL ABSENCE AND MOTION FOR CONTINUANCE

In his seventh, eighth, and ninth issues, J.H. complains that the trial court abused its discretion by denying his motion for continuance and by proceeding with the trial in his absence, that the continuation of the trial in his absence infringed upon his constitutional rights, and that the trial court abused its discretion by summarily denying his counsel's request to continue the trial without considering any of the relevant factors used to determine whether an inmate should personally attend court proceedings.

### A.  Constitutional Arguments Not Preserved

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not preserved, and the complaint is waived.  *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).  The objecting party must get a ruling from the trial court.  Tex. R. App. P. 33.1.  This ruling can be either express or implied.  *Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).

When there are multiple defendants, as in this case, each defendant generally must lodge his own objections in order to preserve error.  *Bohls v.*

17

*Oaks*, 75 S.W.3d 473, 477 (Tex. App.—San Antonio 2002, pet. denied); *Howard v. Philips*, 728 S.W.2d 448, 451 (Tex. App.—Fort Worth 1987, no writ) ("It has been held that in trials where multiple defendants participate, 'a party must make his own objection to the evidence, or an exception to the ruling of the court regarding the objection, if he wishes to preserve any error for appeal.'").

The first day of trial was November 5, 2007. J.H. was the only witness to testify. The trial court recessed the trial at five o'clock, but J.H.'s testimony had not yet concluded. The trial resumed on November 14, 2007. J.H.'s attorney immediately advised the trial court that J.H. had been arrested in DeSoto, that he was in jail, and that he was supposed to be transferred to Dallas and then to Tarrant County. Considering the lack of notice, J.H.'s counsel indicated that he could not get a bench warrant, and he moved for a continuance. The trial court recommended that TDFPS call another witness and that J.H.'s testimony be concluded at another time. J.H.'s counsel did not assert any objection to the continuation of the trial on constitutional grounds.

The trial continued in J.H.'s absence. After one witness testified and in the middle of the cross-examination of the second witness, A.S.'s counsel stated that he "would like to join [J.H.'s counsel's] motion for continuance" and

18

that "[w]e believe that [J.H.] has a constitutional right to be here." The trial proceeded and eventually concluded for the day.

The trial resumed for a third day on November 15, 2007. The record does not demonstrate that J.H. was present in the courtroom. J.H.'s counsel did not move for a continuance or assert any objection to J.H.'s absence on constitutional grounds at this time. Approximately one hour and forty-five minutes later, however, J.H.'s counsel re-urged his objection to the trial proceeding in his client's absence. But the trial proceeded, and the trial court stated, "I bench warranted him yesterday, and I don't know why he's not here. The Court has taken great lengths to get him here. I understand he'll be here shortly." The record shows that J.H. arrived in the courtroom at some point during the testimony of the fourth witness to testify that day.

The record does not demonstrate that J.H. lodged his own objection based on constitutional grounds challenging the trial court's decision to proceed with the trial. Although A.S.'s counsel stated that "we" believe J.H. has a constitutional right to be at trial, A.S.'s counsel did not represent J.H. at trial, nor did J.H.'s counsel join in A.S.'s objection. Morever, even assuming that J.H. had joined in A.S.'s objection, A.S.'s counsel did not assert the objection until some point during the cross-examination of the second witness to testify on November 14, 2007. The objection was therefore untimely. Consequently,

19

J.S. failed to preserve for appellate review his arguments that the continuation of the trial in his absence infringed upon his constitutional rights and that the trial court abused its discretion by denying his counsel's request to continue the trial without considering any of the relevant factors used in determining whether an inmate should personally attend court proceedings. *See* Tex. R. App. P. 33.1(a); *Bohls*, 75 S.W.3d at 477; *Howard*, 728 S.W.2d at 451. We overrule J.H.'s eighth and ninth issues.

**B.    Motion for Continuance**

Whether the trial court grants or denies a motion for continuance is within its sound discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law. *See* Tex. R. Civ. P. 251. If a motion for continuance is not made in writing and verified, it will be presumed that the trial court did not abuse its discretion by denying the motion. *In re E.L.T.*, 93 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

Here, J.H. orally moved for a continuance on November 14, 2007, and orally re-urged his motion for continuance the following day. The record does not contain a written motion for continuance or an affidavit. The record also does not reflect that the parties consented to a continuance, nor does J.H. argue that a continuance should have been granted by operation of law. Because J.H. did not comply with rule 251, the trial court did not abuse its discretion by denying his oral motion for continuance. *See id.*; *In re T.D.N.*, No. 14-07-00387-CV, 2008 WL 2574055, at *1 (Tex. App.—Houston [14th Dist.] June 26, 2008, no pet.) (mem. op.) (holding that trial court did not abuse its discretion by denying oral motion for continuance because appellant did not comply with rule of civil procedure 251). Accordingly, we overrule J.H.'s seventh issue.

## V. SECTION 263.405(b) AND (i) CHALLENGES

In his tenth and eleventh issues, J.H. argues that family code sections 263.405(b) and (i) are unconstitutional because they violate his right to due process and equal protection under the United States and Texas constitutions. Because J.H. filed a timely statement of points listing the issues raised on appeal, we need not consider this issue. *See In re O.L.A.*, No. 02-06-00321-

CV, 2008 WL 706335, at *8 (Tex. App.—Fort Worth Mar. 13, 2008, no pet.) (mem. op.).[4]  We overrule J.H.'s tenth and eleventh issues.

## VI. CONCLUSION

Having overruled all of J.H.'s eleven issues, we affirm the trial court's order terminating his parental rights to T.H. and R.R.H.

DIXON W. HOLMAN
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED:  November 6, 2008

---

[4] We have already ruled that family code section 263.405(i) is void as a violation of the separation of powers provision of the Texas constitution. *See In re D.W.*, 249 S.W.3d 625, 645 (Tex. App.—Fort Worth 2008, pet denied).